FILED
United States Court of Appeals
Tenth Circuit

October 29, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TERRY LEE MARGHEIM,

      Defendant - Appellant.

No. 12-1459

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CR-00326-PAB-17)**

Antony M. Noble of The Noble Law Firm, LLC, Lakewood, Colorado, for
Defendant-Appellant Terry Lee Margheim.

Stephanie N. Gaddy, Special Assistant United States Attorney, Denver, Colorado
(John F. Walsh, United States Attorney, and Gregory M. Morison, Special
Assistant United States Attorney, Denver, Colorado, on the briefs) for Plaintiff-
Appellee.

Before **TYMKOVICH**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

     At the conclusion of a bench trial, Terry Lee Margheim was convicted of

five counts of an indictment, charging him with various drug- and firearm-related

offenses.  He was sentenced to a term of 132 months' imprisonment.  Mr. Margheim now challenges the validity of his conviction, claiming (1) that the district court failed to comply with the requirements of the Speedy Trial Act of 1974 (the "Act"), 18 U.S.C. § 3161 *et seq.*; and (2) that he was denied his constitutional right to a speedy trial under the Sixth Amendment.  Exercising jurisdiction under 28 U.S.C. § 1291, we reject his challenges and **affirm** Mr. Margheim's conviction.

## I

In 2008, a special task force conducted an extensive investigation of firearms and narcotics violations in Greeley, Colorado.  The fruit of that endeavor was a multi-count indictment naming thirty defendants—including Mr. Margheim—in a drug-and-gun conspiracy.  Mr. Margheim, a previously convicted felon (on drug charges), had attracted the task force's attention by telling a confidential informant ("CI") that he had a firearm for sale.  With the CI's assistance, Mr. Margheim sold that firearm to an undercover special agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  When the task force learned that Mr. Margheim intended to trade his car for methamphetamine, it began exploring Mr. Margheim's association with the suspected conspiracy.  The task force arranged another controlled purchase at Mr. Margheim's residence whereby on December 10, 2009, Mr. Margheim sold the undercover SA a short-barreled shotgun and methamphetamine.

2

Mr. Margheim was subsequently arrested. He made his initial appearance on July 14, 2010 and went to trial on May 15, 2012. Because the filings interposed between these two events are critical to the central issue on appeal—i.e., whether Mr. Margheim was deprived of his right to a speedy trial—we recite them in detail.

On July 20, 2010, the due date for all pretrial motions, Mr. Margheim moved to vacate that deadline in part because his attorney had entered her appearance that day. The government contemporaneously sought a seven-day continuance to file expert witness disclosures and, one week later, moved to have thirty-seven days excluded from speedy-trial calculations under the Act. Mr. Margheim then filed an unopposed motion wherein he argued that his case was "unusual and complex and merit[ed] ends of justice findings," and requested a continuance of 120 days to file additional motions. R., Vol. I, at 214 (Mot., filed July 30, 2010). Under the Act, periods of time resulting from a continuance are excludable, *inter alia*, if the district court, either orally or in writing, "granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Based on Mr. Margheim's request, on August 3, 2010, the district court granted such a continuance—commonly referred to as an ends-of-justice continuance—for 120 days (as he requested) and vacated the prior motions deadline.

3

After the government filed a superseding indictment on August 11, 2010, the codefendants collectively filed over 150 motions. For his part, on September 17, 2010, Mr. Margheim moved for discovery of coconspirator statements, discovery of experts, and disclosure of evidence that would implicate Federal Rule of Evidence 404(b). The government received a brief continuance to facilitate its response to the glut of pending motions. On October 15, 2010, the district court held a hearing to address the defendants' sundry filings—except for those involving Mr. Margheim, whose attorney had withdrawn from the case on October 11, 2010. New counsel was appointed for Mr. Margheim on October 22, 2010.

On February 9, 2011, Mr. Margheim filed a motion to suppress "all evidence obtained against him as a result of [an allegedly] unreasonable and unconstitutional intrusion onto his curtilage." R., Vol. I, at 452 (Mot. to Suppress, filed Feb. 9, 2011). The government filed a response brief on February 24, 2011, arguing that the court should deny the motion without holding a hearing. Mr. Margheim filed a pro se supplement to the motion on March 29, 2011, but the district court ordered it stricken from the record as an improper pro se pleading. *See United States v. Dunbar*, 718 F.3d 1268, 1278 (10th Cir.) ("[T]he trial judge has no duty to consider pro se motions by a represented defendant."), *cert. denied*, --- U.S. ----, 134 S. Ct. 808 (2013). The record demonstrates that Mr. Margheim never actually proceeded pro se: his third

4

attorney entered an appearance on March 15, 2011, one day before his second attorney notified the court that Mr. Margheim had "instructed him to withdraw." R., Vol. I, at 475 (Mot. to Withdraw, filed Mar. 16, 2011).  Similarly, after dismissing his third attorney one month later, Mr. Margheim swiftly retained new representation.

Notably, Mr. Margheim's final codefendant entered his initial appearance on May 24, 2011.  Still pending at that time was Mr. Margheim's February 9, 2011, motion to suppress, for which he had not filed a reply brief.  On November 14, 2011, the district court ordered Mr. Margheim to file a reply in support of that motion "on or before . . . November 21, 2011."  Dist. Ct. Doc. 1881 (Min. Order, dated Nov. 14, 2011).  Mr. Margheim instead moved to *withdraw* the motion to suppress on November 21, 2011.  On January 11, 2012, he moved to withdraw several other pretrial motions.  He also filed a pro se motion to dismiss the indictment on January 19, 2012, which was ordered stricken from the record.

With his April 2012 trial rapidly approaching, Mr. Margheim filed a counseled motion to dismiss the indictment for an alleged violation of the Act on March 30, 2012.  The district court denied this motion on April 5, 2012, concluding, *inter alia*, that "with the usual seventy-day time period provided by the Speedy Trial Act and the 120-day ends-of-justice exclusion entered in this case, the Government has 190 days in which to try [Mr.] Margheim."  R., Vol. I,

5

at 629 (Order, filed Apr. 5, 2012). The next day, the court granted the government's request for an additional seven-day ends-of-justice continuance.

On April 13, 2012, Mr. Margheim filed a pro se motion to dismiss the indictment for violations of the Act as well as his Sixth Amendment right to a speedy trial. He appeared at a pretrial hearing that day wherein he received a fourteen-day ends-of-justice continuance and confirmed "aware[ness] that that time [would] be excluded." R., Vol. III, at 20 (Hr'g Tr., dated Apr. 13, 2012).[1] Subsequently, on April 19, 2012, the district court issued a written order denying Mr. Margheim's pro se motion to dismiss. And, on April 23, 2012, the court (1) granted Mr. Margheim's motion to withdraw his February 2011 motion to suppress; (2) granted Mr. Margheim's motion to withdraw other filings; and (3) allowed Mr. Margheim to file an additional pro se motion to suppress.

At a hearing on May 14, 2012, the district court heard arguments on, and then denied, Mr. Margheim's latest pro se motion to suppress. Mr. Margheim's bench trial commenced on May 15, 2012. He was convicted on May 16, 2012 and was sentenced to serve 132 months in prison on November 1, 2012. This appeal followed.

---

[1] Filing a motion to continue the trial date does not operate as a waiver of a defendant's rights under the Act. *See United States v. Allen*, 603 F.3d 1202, 1208 n.5 (10th Cir. 2010).

## II

On appeal, Mr. Margheim claims violations of his statutory and Sixth Amendment speedy-trial rights. We first address his statutory arguments that: (1) the length of time between his initial appearance and the initial appearance of his final codefendant was unreasonable; (2) the number of nonexcludable days exceeded the Act's prescribed seventy; and (3) the district court improperly double-counted the 120-day ends-of-justice continuance.

We generally review a district court's denial of a motion to dismiss under the Act for abuse of discretion. *See United States v. Banks*, 761 F.3d 1163, 1174 (10th Cir.), *cert. denied*, --- U.S. ----, --- S. Ct. ----, 83 U.S.L.W. 3141 (U.S. Oct. 6, 2014); *United States v. Thompson*, 524 F.3d 1126, 1131 (10th Cir. 2008). Similarly, we "review the decision to grant an ends-of-justice continuance for abuse of discretion." *United States v. Watson*, 766 F.3d 1219, 1228 (10th Cir. 2014) (quoting *Banks*, 761 F.3d at 1174) (internal quotation marks omitted); *accord United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998).

Bearing in mind that a district court's discretion under the ends-of-justice provision has "limits and [is] subject to specific procedures," *Zedner v. United States*, 547 U.S. 489, 499 (2006), "appellate review of decisions made under the [Act] encompasses a review of whether the district court complied with those procedures," *Watson*, 766 F.3d at 1228. And we resolve the question of whether the district court in fact heeded those procedural requirements (i.e., used the

7

proper legal standards) under a de novo standard. *See United States v. Thomas*, 749 F.3d 1302, 1308 (10th Cir. 2014); *United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009). "An abuse of discretion occurs when the district court . . . fails to consider the applicable legal standard." *United States v. Hasan*, 609 F.3d 1121, 1127 (10th Cir. 2010) (citations omitted) (internal quotation marks omitted); *see In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 (10th Cir. 2009) ("When the district court errs in deciding a legal issue, it necessarily abuses its discretion." (quoting *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006)) (internal quotation marks omitted)). In addition, we review any factual findings underlying the district court's ends-of-justice ruling for clear error. *See Thompson*, 524 F.3d at 1131; *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996).

Having set forth the appropriate standards, we begin by providing some background on the Act. We then take up each of Mr. Margheim's statutory arguments and reject them.

**A**

Under the Act, a federal criminal trial must begin within seventy days of the filing of the indictment or from the date of the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1); *Banks*, 761 F.3d at 1175. The purpose of the statute is to "protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal

8

proceedings." *United States v. Solon*, 596 F.3d 1206, 1214 (10th Cir. 2010) (quoting *Thompson*, 524 F.3d at 1131) (internal quotation marks omitted). When a defendant demonstrates a violation of the Act, the proper remedy is dismissal of the indictment. *See* 18 U.S.C. § 3162(a)(2); *United States v. Gomez*, 67 F.3d 1515, 1519 (10th Cir. 1995). "[T]he district court retains broad discretion whether to dismiss the indictment with or without prejudice." *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006).

Several "enumerated events" are excluded from the statute's prescribed seventy-day period, thus tolling the speedy-trial clock. *Bloate v. United States*, 559 U.S. 196, 199 (2010); *accord United States v. Gordon*, 710 F.3d 1124, 1157 (10th Cir.), *cert. denied*, --- U.S. ----, 134 S. Ct. 617 (2013). As is relevant here, 18 U.S.C. § 3161(h)(1)(D) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Additionally, § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." We have previously explained that these subsections work in concert such that "if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the

9

motion is taken under advisement." *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007).

As noted in Part I, *supra*, time is also excludable when the district court grants a continuance upon a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *accord Watson*, 766 F.3d at 1229. Ends-of-justice continuances afford the district court a modicum of flexibility in managing particularly complex or difficult cases. *See Zedner*, 547 U.S. at 508. Nevertheless, "[w]e have repeatedly noted that an ends-of-justice continuance is 'meant to be a rarely used tool for those cases demanding more flexible treatment,'" *Banks*, 761 F.3d at 1175 (quoting *Toombs*, 574 F.3d at 1269), and that such continuances "should not be granted cavalierly," *id.* (quoting *Williams*, 511 F.3d at 1049) (internal quotation marks omitted).

**B**

We first consider Mr. Margheim's argument that the temporal gap between his initial appearance and that of his final codefendant effected an unreasonable delay. The relevant statutory provision excludes "[a] *reasonable* period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6) (emphasis added). The general rule is that "[a]ll defendants who are joined for trial . . . fall within the speedy trial computation of the latest

10

codefendant." *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986). In this case, the "latest" codefendant appeared on May 24, 2011, which postdates Mr. Margheim's initial appearance (July 14, 2010) by ten months. Mr. Margheim contends that this time period is not a "reasonable" delay within the meaning of § 3161(h)(6) of the Act and, as such, is not excludable.

In determining whether delay attributable to a codefendant is reasonable, a court must examine all relevant circumstances. Our circuit has articulated three factors to guide district courts in this exercise: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *United States v. Vogl*, 374 F.3d 976, 984 (10th Cir. 2004) (quoting *United States v. Olivo*, 69 F.3d 1057, 1061 (10th Cir. 1995)). We are satisfied that the district court properly weighed the relevant variables (hereinafter, the "*Vogl* factors") and reached the correct result.

Turning to the *Vogl* factors, we agree with the district court's conclusion that the first one favors Mr. Margheim, as he was not free on bond.[2] The second factor—zealous pursuit of speedy-trial rights—requires a close look at whether a

[2] As the district court noted, this factor "is not dispositive." R., Vol. I, at 764; *see United States v. Loud Hawk*, 474 U.S. 302, 311 (1986) (observing that a "substantial[] impairment of liberty" also befalls defendants who are released on bond (quoting *United States v. MacDonald*, 456 U.S. 1, 8 (1982)) (internal quotation marks omitted)).

11

defendant sought a severance from codefendants or filed motions for continuances

or dismissal during the challenged time period. *See United States v. Tranakos*,

911 F.2d 1422, 1426 (10th Cir. 1990). Here, the district court observed that Mr.

Margheim *did* file two motions seeking a speedy trial, but *not* during the disputed

ten-month interval. Moreover, the district court opined, Mr. Margheim

"necessitat[ed] some additional delay" by requesting the 120-day ends-of-justice

continuance[3] and changing attorneys several times during that interlude. R., Vol.

I, at 764. From the district court's perspective, this conduct by Mr. Margheim

tipped the second *Vogl* factor towards the government. We detect no reversible

error in this analysis.

---

[3]       Mr. Margheim's suggestion that the second *Vogl* factor favors *him* because he personally "did not consent to" the ends-of-justice continuance, Aplt. Opening Br. at 10, is legally untenable. On its face, the Act permits courts to grant continuances "at the request of the defendant *or his counsel*." 18 U.S.C. § 3161(h)(7)(A) (emphasis added). The Supreme Court's guidance on trial management indicates that this provision does not require the defendant's personal acquiescence. *See New York v. Hill*, 528 U.S. 110, 115 (2000) ("[When] a specified delay in trial . . . is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case."); *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("[T]he lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval."). Consistent with that view, we have taken the position that whether an ends-of-justice motion has tolling effect depends on whether the court made the necessary findings, *not* whether the defendant gave his blessing to the continuance. *See, e.g.*, *United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013), *aff'd*, --- U.S. ----, 134 S. Ct. 2384 (2014); *Toombs*, 574 F.3d at 1269. Thus, we need not—and do not—dwell on the particulars of Mr. Margheim's personal "consent" (or lack thereof) to the 120-day ends-of-justice continuance.

In particular, we find no merit in Mr. Margheim's contrary contention that he "zealously" pursued a speedy trial. His assertion of the right in early 2012 (vis-à-vis motions to dismiss the indictment), while relevant for other purposes, has no bearing on the ten-month period of delay at issue. During that time period, Mr. Margheim filed several substantive pretrial motions which signaled his intent to maximize time allotted for discovery. He later withdrew those motions and, in an abrupt tactical reversal, went from disputing the charges to disputing whether he was properly joined to the conspiracy. *See* Aplt. Opening Br. at 11.

Critically, at no point did Mr. Margheim move for a severance—and this, in our view (when considered in the context of his other pretrial conduct), fatally undercuts Mr. Margheim's argument. *See Tranakos*, 911 F.2d at 1426 (chiding defendant who "never sought a severance from the other defendants"); *see also United States v. Vasquez*, 918 F.2d 329, 336–37 (2d Cir. 1990) (preventing codefendants from arguing unreasonable delay when neither moved to sever in a timely manner); *cf. United States v. Theron*, 782 F.2d 1510, 1512 (10th Cir. 1986) (noting as favorable to the defendant's cause the fact that he "moved for a severance and an immediate trial, did not join any of his codefendants' motions, and was willing to be tried immediately even if it meant waiving certain rights"). We find it fair to conclude that if Mr. Margheim *was* concerned about improper joinder, he would have filed a motion to sever during the time period he now claims was improperly excluded. Because he did not, and considering his other

13

pretrial conduct, we agree with the district court that the second *Vogl* factor weighs in the government's favor.

Finally, we conclude that the third *Vogl* factor—effective use of resources—also favors the government's position. "When examining the relevant circumstances, [we] consider . . . the 'obvious purpose behind the exclusion'; that is, 'to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Olivo*, 69 F.3d at 1061 (quoting *Theron*, 782 F.2d at 1514). A single trial is ideal when the government plans to "recite a single factual history, put on a single array of evidence, and call a single group of witnesses." *Vogl*, 374 F.3d at 984 (quoting *Tranakos*, 911 F.2d at 1426) (internal quotation marks omitted). The inquiry associated with this aspect of our analysis is highly fact-sensitive. *See id.*

Mr. Margheim maintains that his circumstances do not promote the "purpose behind the exclusion" because he was named in only five[4] of the superseding indictment's 146 counts. And, he insists, the nature of the charges against him—three firearm-related and two drug-related charges—proves that he "was not charged with conspiring with the other co-defendants in a single conspiracy." Aplt. Opening Br. at 11. We reject this argument. Whether the government elects, in its broad charging discretion, to expressly charge a

---

[4] Mr. Margheim was initially named in six counts; the government agreed to dismissal of the sixth original count.

14

defendant with conspiracy will not necessarily indicate anything about whether the defendant's allegedly criminal conduct was sufficiently interwoven with that of the charged conspirators such that there would be judicial or prosecutorial efficiency gains in trying the defendant along with the charged conspirators. *Cf. United States v. DeVillio*, 983 F.2d 1185, 1193–94 (2d Cir. 1993) (holding that statements were within the scope of the coconspirator exemption to the hearsay rule, Fed. R. Evid. 801(d)(2)(E), "even though the appellants were not charged in the indictment with being members of the conspiracy"). Indeed, the record here reveals that Mr. Margheim was involved in activities that were intertwined with the charged conspiracy (whether he was an actual conspirator or not), working in concert with more than one codefendant in drug sales on December 10, 2009 and January 22, 2010. *See, e.g.*, R., Vol. II, at 162–63 (Hr'g Tr., dated May 14, 2012) ("[W]e then intercepted telephone calls between Mr. Margheim and [Defendant] Domingo Garcia."); *id.* at 163 ("Our surveillance units had observed Mr. Margheim driving . . . the target vehicle of our entire investigation . . . ."); *id.* at 164 (noting that codefendants had discussed "tak[ing] Mr. Margheim's car to show . . . [Defendant] Rodolfo Dominguez"); *id.* at 168–69 (citing the CI's suspicion that Mr. Margheim procured methamphetamine from Defendant Trujillo).

Consequently, we reject Mr. Margheim's suggestion that, due to his non-conspiracy charges, his conduct was sufficiently divorced from the charged

15

conspiracy that it would not reasonably further the purposes of 18 U.S.C.

§ 3161(h)(6)'s exclusion to employ that provision in his speedy-trial computation.

Under a similar logic, moreover, we do not believe that the government's

discretionary decision to charge Mr. Margheim with only a comparatively small

number of counts necessarily tells us anything about the extent of his involvement

in the conspiracy and other offenses charged in the indictment.  And on this

record, as we have just seen, his involvement was sufficient to implicate the

purposes of § 3161(h)(6)'s exclusion.

Mr. Margheim proffers several cases that he believes illustrate why the ten-

month exclusion ought not apply to him.  Yet, Mr. Margheim's belief that these

authorities shift the third *Vogl* factor in his favor is puzzling.  Insofar as they are

apposite at all, these cases actually tend to underscore legal principles that

militate against Mr. Margheim's cause: specifically, (1) when feasible, courts

prefer joint conspiracy trials; (2) exclusions traceable to one defendant generally

apply to his codefendants; (3) a defendant who does not move to sever risks

having codefendants' exclusions applied to him; and (4) without demonstrating

actual prejudice from the delay, defendants will rarely prevail on the theory that

such exclusions are unreasonable.[5]

---

[5]     *See United States v. Messer*, 197 F.3d 330, 339 (9th Cir. 1999);
*United States v. Cordova*, 157 F.3d 587, 599 (8th Cir. 1998); *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998); *United States v. Mayes*, 917 F.2d 457, 459–61 (10th Cir. 1990); *United States v. Tobin*, 840 F.2d 867, 870 (11th
(continued...)

16

In sum, we conclude that the ten-month period of delay between Mr. Margheim's initial appearance and that of his final codefendant was not "unreasonable." Accordingly, we hold that this time period was properly excludable under the Act and uphold the district court's ruling to this effect.

## C

By the time Mr. Margheim went to trial, 356 days had elapsed since his final codefendant's initial appearance. Consequently, we must determine how many of those days can be excluded under the Act. The Act obliged the government to bring Mr. Margheim to trial within seventy days of the last codefendant's appearance. Therefore, dismissal is required unless at least 286 of the 356 days are excludable. *See* 18 U.S.C. § 3162(a)(2). We requested supplemental briefing on this issue at oral argument.

While the parties agree that certain pretrial motions tolled the speedy-trial calendar under § 3161(h), they espouse different views on which motions had that effect. Mr. Margheim contends that ninety-eight days are not excludable under the Act—or, conversely, that 258 days (not the necessary 286) *are* excludable. He arrives at this total by adding "fifty days from November 22, 2011, to January 10, 2012" to "forty-eight days for the period from February 11, 2012, to March 29, 2012," during which periods he insists "no motions were pending." Aplt.

---

[5](...continued)
Cir. 1988); *United States v. Wright*, 826 F.2d 938, 945 (10th Cir. 1987).

17

Supp. Br. at 5. However, we reach a different result: that 288 days are excludable, placing the government in the clear (albeit just barely).

First, Mr. Margheim's attorney-filed motion to suppress permits us to exclude 181 days. The applicable time period for this motion spans from February 9, 2011—the filing date—through November 21, 2011—the day Mr. Margheim withdrew the motion. *See Williams*, 511 F.3d at 1051 n.5 ("We . . . assume in our calculations that the excludable period from the filing of the motion through the conclusion . . . of such motion includes both the date of resolution of any pretrial motion *and* the date of filing." (second omission in original) (internal quotation marks omitted)); *Vogl*, 374 F.3d at 983 n.6 (operating under the premise that "the clock would be stopped from the date of filing that motion").

Mr. Margheim's actions dictate how we must classify and ultimately address the legal implications of this motion to suppress. Under § 3161(h)(1)(D), periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" are excludable. Section 3161(h)(1)(H) refines the scope of subsection (D) by excluding periods of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." "*If under advisement*, the maximum

18

excludable delay for the court's determination is 30 days." *United States v. Willie*, 941 F.2d 1384, 1387 (10th Cir. 1991) (emphasis added).

Guided by the Supreme Court's interpretation of the interplay between these provisions in *Henderson*, we conclude that Mr. Margheim's motion to suppress was never "actually under advisement." In *Henderson*, the Court instructed that "[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." 476 U.S. at 331. The Court defined "under advisement" to begin at "the time the court receives all the papers it reasonably expects." *Id.* at 329. We have interpreted *Henderson*'s holding to mean that if the district court seeks "more information upon which to make its ruling" on a motion, the advisement period does not begin "[u]ntil the court obtains that information." *Willie*, 941 F.2d at 1388 n.2.

Here, we can safely presume that the district court found it prudent not to rule on the suppression issue without first considering Mr. Margheim's rejoinder to the government's response-brief arguments. We are comfortable making this inference because on November 14, 2011, the district court ordered Mr. Margheim to file a reply brief by November 21, 2011. *If* Mr. Margheim had replied, it seems a fair conclusion that the district court would have possessed all of the necessary information for its decision—and the motion could be deemed "under advisement" on the date of Mr. Margheim's timely reply-brief filing. Mr.

19

Margheim cannot benefit from the Act's thirty-day under-advisement exclusion, however, because—instead of filing a reply—he elected to *withdraw* the motion on November 21, 2011. The practical significance of this choice is that the court never had sufficient information to issue a ruling on the motion to suppress. In other words, the motion was never "actually under advisement" as contemplated by § 3161(h)(1)(H) between February 9, 2011, and November 21, 2011. Instead, it was *disposed of* under § 3161(h)(1)(D) when Mr. Margheim filed his November 21, 2011, motion to withdraw the motion to suppress.

Thirty days attributable to the motion to withdraw the suppression motion are also excludable under the Act. Mr. Margheim filed this motion on November 21, 2011, a date we omit from computations because we have already counted it toward the pending-motion-to-suppress exclusion. Further, we infer from the district's one-line mandate granting the motion on April 23, 2012 that neither a response nor a hearing was necessary.[6] As a result, under § 3161(h)(1)(H), the

---

[6] We reject Mr. Margheim's contention that "[t]he motion to withdraw the suppression motion was not a motion," Aplt. Supp. Br. at 4, because it does not "state the grounds on which it is based and the relief or order sought," Fed. R. Crim. P. 47(b). In our view, Mr. Margheim's filing was a "motion[] that may be made before trial"—i.e., a "request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2) (capitalization altered). And, in the same vein, Federal Rule of Criminal Procedure 47 makes clear that any time a party "appl[ies] to the court for an order," as Mr. Margheim did by announcing his intent to withdraw the suppression motion, he "must do so by motion." Fed. R. Crim. P. 47(a). We do not accept Mr. Margheim's apparent view that his motion was self-executing; in light of our circuit's reliance in "significant measure on the ability of the district court to manage its own docket," *Katz v.*

(continued...)

20

time period between November 22, 2011, and December 21, 2011—thirty

days—is excluded from the speedy-trial calendar.

On January 11, 2012, Mr. Margheim filed another withdrawal motion, this

time corresponding to several motions predating his motion to suppress. January

11, 2012, the filing date, is thereby excludable under the Act. *See Williams*, 511

F.3d at 1051 n.5. As with the motion to withdraw the suppression motion (and

based on the record), we make the assumption favorable to Mr. Margheim in our

calculations that this motion required no response or hearing. Therefore, although

the motion was not granted until April 23, 2012, only thirty additional days from

the time of filing may be excluded. We thus exclude the time period beginning

January 12, 2012, and ending February 10, 2012.

All of the foregoing motions account for 242 excludable days of the 356-

day delay. Five other pretrial motions, which require much simpler calculations,

act to toll the speedy-trial clock in Mr. Margheim's case for a total of forty-six

additional days. Consequently, the aggregate number of excludable days

produced by various tolling motions is 288. In the interest of brevity, we

enumerate them in chart form below:

---

[6](...continued)
*Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)) (internal quotation marks omitted), it is clear that he needed the court's permission to withdraw prior motions.

| Tolling Motion | Relevant Documents | Time Period Excluded | Excludable Days |
|---|---|---|---|
| Mr. Margheim's Attorney-Filed Motion to Suppress | Dist. Ct. Doc. 1200<br>Dist. Ct. Doc. 1892 (withdrawing) | February 9, 2011 –<br>November 21, 2011 | 181 days |
| Mr. Margheim's Motion to Withdraw Motion to Suppress | Dist. Ct. Doc. 1892<br>Dist. Ct. Doc. 2186 (granting) | November 22, 2011 –<br>December 21, 2011 | 30 days |
| Mr. Margheim's Motion to Withdraw Pretrial Motions | Dist. Ct. Doc. 1949<br>Dist. Ct. Doc. 2186 (granting) | January 11, 2012 –<br>February 10, 2012 | 31 days |
| Mr. Margheim's Attorney-Filed Motion to Dismiss for Speedy Trial Act Violations | Dist. Ct. Doc. 2117<br>Dist. Ct. Doc. 2128 (denying) | March 30, 2012 –<br>April 5, 2012 | 7 days |
| Government's Motion for Seven-Day Ends-of-Justice Continuance | Dist. Ct. Doc. 2136<br>Dist. Ct. Doc. 2137 (granting) | April 6, 2012 –<br>April 13, 2012 | 8 days |
| Mr. Margheim's Pro Se Motion to Dismiss for Speedy Trial Act and Constitutional Violations | Dist. Ct. Doc. 2164<br>Dist. Ct. Doc. 2179 (denying) | April 14, 2012[7] –<br>April 19, 2012 | 6 days |
| Mr. Margheim's Motion for Fourteen-Day Ends-of-Justice Continuance | Dist. Ct. Doc. 2168<br>Dist. Ct. Doc. 2179 (granting) | April 20, 2012 –<br>May 3, 2012 | 14 days |
| Mr. Margheim's Pro Se Motion to Suppress | Dist. Ct. Doc. 2184<br>Dist. Ct. Doc. 2212 (confirming denial) | May 4, 2012 –<br>May 14, 2012 | 11 days |
| **Trial Began:** May 15, 2012 | | | |
| **TOTAL EXCLUDABLE DAYS:** | | | **288 days** |

Having determined that 288 days do not count against the government's obligations under the Act, we note that there were only sixty-eight statutorily nonexcludable days between May 24, 2011, and May 15, 2012, which are counted in the speedy-trial analysis. Yet, notably, the Act clearly allows for Mr. Margheim's trial to "commence within seventy days" of May 24, 2011. *See* 18 U.S.C. § 3161(c)(1). Thus, the government came close to the limit, but sixty-eight days indisputably satisfies the statutory mandate of "within seventy days."

---

[7] We do not include the filing date of this motion—April 13, 2012—in our calculation because that date has already been counted toward the government's motion for a seven-day ends-of-justice continuance.

For this reason, we affirm the district court's conclusion that there was no violation of the Act.

**D**

As his final statutory argument, Mr. Margheim claims the district court erroneously "double counted" the days attributable to his 120-day ends-of-justice continuance when computing time under the Act. He explains that the court first excluded these days in the context of determining whether the delay between his initial appearance and that of his last codefendant was reasonable. *See* R., Vol. I, at 764 ("[D]uring this ten-month delay, Margheim successfully sought a 120-day ends-of-justice continuance . . . ."). He then insists that the court excised the *same* 120-day allotment from the time period between the withdrawal of his motion to suppress and the commencement of trial. *See id.* at 765–66 ("From November 21, 2011, to the start of trial, on May 14, 2012, 175 days will have elapsed. But the Government [had] 190 days to try Margheim based on the seventy days allotted by the [Act], and 120 days the Court previously excluded under the [Act's] ends-of-justice provision." (footnote omitted) (citations omitted)).

Even if we were to conclude that Mr. Margheim's "double counting" issue presented a colorable contention of error, we would reach the same outcome here. That is because our analysis has indicated that, irrespective of whether the district court "double counted" the 120-day ends-of-justice continuance, Mr. Margheim's

23

trial commenced in a timely fashion. Put another way, our speedy-trial analysis—which concluded that the trial was timely under the Act—has not depended in any material way on whether the court counted the 120-day continuance once or (erroneously) twice.

As we noted in Part II.C, *supra*, focusing solely on the tolling implications of multiple motions filed in this case—but notably not considering the motion for a 120-day ends-of-justice continuance—we reached the conclusion that the trial started on a timely basis. More specifically, we demonstrated that the aggregate effect of various motions filed between the last codefendant's appearance and the start of Mr. Margheim's trial was to exclude 288 days of the applicable 356-day period. As a result, considering all of the relevant statutory exclusions, we concluded that the government brought Mr. Margheim to trial within sixty-eight days of the last codefendant's appearance for purposes of the Speedy Trial Act—that is, *within* the requisite seventy days.

Accordingly, whether the district court erred by "double counting" the 120-day continuance is immaterial to the outcome here. We may still uphold the district court's speedy-trial decision. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[I]n reviewing the decision of a lower court, it

24

must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." (internal quotation marks omitted)). We therefore affirm the district court's determination that Mr. Margheim's statutory speedy-trial right was not violated; dismissal of the indictment on that basis was thus not warranted.

## III

Mr. Margheim next avers that he was deprived of his constitutional right under the Sixth Amendment to a speedy trial. We review this claim de novo, *see United States v. Larson*, 627 F.3d 1198, 1207 (10th Cir. 2010), and reject it.

## A

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[A]lthough the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010). Recognizing the breadth of this constitutional language, the Supreme Court has "qualified the literal sweep of the provision." *Doggett v. United States*, 505 U.S. 647, 651 (1992).

In *Barker v. Wingo*, the Supreme Court created a four-part inquiry to determine whether a particular delay violates a defendant's constitutional right to a speedy trial. 407 U.S. 514, 530–32 (1972). Courts applying the *Barker* test must balance the following factors: "(1) the length of delay; (2) the reason for the

25

delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006). Because "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis," *Barker*, 407 U.S. at 530, all factors should be evaluated, *see Seltzer*, 595 F.3d at 1176. The first factor, however, "functions as a triggering mechanism," *Toombs*, 574 F.3d at 1274 (quoting *Yehling*, 456 F.3d at 1243) (internal quotation marks omitted), and the remaining three factors need only be assessed "if the delay is long enough to be presumptively prejudicial," *Yehling*, 456 F.3d at 1243.

## B

After performing the requisite *Barker* balancing test, the district court determined that no constitutional violation had occurred. More specifically, the court reasoned that: (1) the "length of delay" favored Mr. Margheim; (2) the "reason for delay" was neutral between the parties; (3) Mr. Margheim's "assertion of his right" favored the government; and (4) "prejudice to the defendant" favored the government. We discern no reversible error in the district court's analysis or in its ultimate determination.

## 1

Our court has recognized that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). The delay between Mr. Margheim's

26

indictment[8] and the start of his trial was twenty-three months—nearly two years—and both parties accept the premise that this delay is presumptively prejudicial. And we agree. Because "the extent to which [this] delay stretches beyond the bare minimum [of a year] needed to trigger judicial examination" is nearly one additional year, we conclude that this factor weighs entirely in Mr. Margheim's favor. *Larson*, 627 F.3d at 1208 (quoting *Seltzer*, 595 F.3d at 1176) (internal quotation marks omitted). This determination obliges us to examine the remaining *Barker* factors. *See Gomez*, 67 F.3d at 1521 ("[T]he delay, in excess of one year, triggers consideration of the other *Barker* factors.").

## 2

The second *Barker* factor—the reason for delay—is "[t]he flag all litigants seek to capture." *Loud Hawk*, 474 U.S. at 315. At this juncture, the court must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion. It is incumbent upon the government to present acceptable reasons for the delay. *See Seltzer*, 595 F.3d at 1177. "Purposeful delay or delay to gain advantage weighs heavily against the government, while '[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily.'" *United States v. Gould*, 672 F.3d 930, 937 (10th Cir. 2012)

---

[8] "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest . . . that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971); *accord Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).

(alterations in original) (quoting *Barker*, 407 U.S. at 531). Of course, this factor "weighs heavily against" the defendant if his own actions "were the primary cause of the delay." *Larson*, 627 F.3d at 1208 (quoting *Toombs*, 574 F.3d at 1274) (internal quotation marks omitted).

In Mr. Margheim's case, the district court deemed this factor "roughly neutral" based on the complex nature of the case and the fact that both parties had requested ends-of-justice continuances. *See* R., Vol. I, at 769, 771. Mr. Margheim acknowledges that his continuance motion contributed to the delay, but he insists that the balance of the time nonetheless counts against the government. This is so, he claims, because (1) "the government filed numerous requests for extensions and continuances," Aplt. Opening Br. at 22; (2) "he believed that the government was threatening him with a sentence enhancement if he litigated his suppression issue," *id.*; and (3) three days before he sought an ends-of-justice continuance, the government had also filed for such relief. None of Mr. Margheim's arguments even hint at reversible error.

We agree with the district court's conclusion regarding Mr. Margheim's first argument—namely, that, "generally speaking, the delay in this case has been due to the complicated nature of prosecuting thirty-one (properly joined) co-defendants."[9] R., Vol. I, at 768. In our view, the complexity of this conspiracy case justified the government's continuance requests. Examining the

---

[9] The thirty-first codefendant was added in the superseding indictment.

28

government's proffered reasons in support of these motions (e.g., ensuring complete discovery, allowing time for codefendants to file motions, and to prepare responses to 150 defense motions) solidifies our view that this case falls into the camp of "those cases demanding more flexible treatment." *Toombs*, 574 F.3d at 1269 (quoting *United States v. Doran*, 882 F.2d 1151, 1515 (10th Cir. 1989)) (internal quotation marks omitted).

The district court also properly determined that none of the prosecutorial delay was motivated by bad faith.[10] *See* R., Vol. I, at 768. To that end, Mr. Margheim's assertion that he was stymied by the government's "threat[ ] . . . [of] a sentence enhancement if he litigated his suppression issue," Aplt. Opening Br. at 22, is unfounded. Mr. Margheim apparently believes that the government's notice of its intent to file an information pursuant to 21 U.S.C. § 851 was a malicious attempt to hamper his trial preparation. However, given Mr. Margheim's prior felony drug conviction, any sentencing enhancement had a firm statutory basis. *See United States v. Cornelius*, 696 F.3d 1307, 1327 (10th Cir. 2012) (observing government's prerogative to file a § 851 information in a drug case for a defendant previously convicted under 21 U.S.C. § 841(b)(1)(A)). It

---

[10]    One of the government's motions was due to its own negligence. *See* R., Vol. I, at 173 (Mot. filed July 20, 2010) ("The government inexplicably allowed the Court's disclosure deadline to pass . . . [and] cannot offer any justifiable excuse for this missed deadline . . . ."). Under *Barker*, however, negligence is considered "[a] more neutral reason" on a par with overcrowded courts. 407 U.S. at 531.

was likewise not improper of the government to have suggested that it might *not* file a § 851 information if Mr. Margheim agreed to plead guilty. *See United States v. Pinter*, 971 F.2d 554, 557 (10th Cir. 1992) ("[P]lea agreements[] function as an essential part of the criminal justice process and are highly desirable as a means to assist law enforcement investigative efforts." (internal quotation marks omitted)). The record indicates no evidence of underhanded tactics; accordingly, the government's allegedly improper motive has no impact on the reason for delay.

Moreover, turning to the ends-of-justice continuances, it is of no moment that the government's motion (July 27, 2010) preceded Mr. Margheim's (July 30, 2010) by three days. The salient point is that the government requested thirty-seven days, whereas Mr. Margheim requested 120. No matter how we adjust the numbers for overlap, the fact remains that Mr. Margheim contributed significantly more to the delay than the government by seeking this continuance. From a strictly numerical perspective, it is impossible to conclude that the second *Barker* factor is a victory for Mr. Margheim. In fact, it seems that the court's characterization of this factor as "roughly neutral" was a gift to Mr. Margheim it was not obligated to give. *See Abdush-Shakur*, 465 F.3d at 465 ("Delays attributable to the defendant do not weigh against the government."); *cf. Gould*, 672 F.3d at 938 (finding that even when the government causes most of the delay, this factor weighs less heavily against it if no dilatory purpose exists).

30

Accordingly, though we might have concluded that this factor favors the government, we defer to the district court's weighing and its determination that *Barker*'s second factor is a wash.

**3**

At the third step of the *Barker* test, we assign strong weight to the defendant's assertion of his constitutional speedy-trial right, but "[w]e may weigh the frequency and force of [his] objections" to the delay. *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975); *accord Seltzer*, 595 F.3d at 1179. In other words, assertion of the right to a speedy trial "is not satisfied merely by moving to dismiss after the delay has already occurred." *Batie*, 433 F.3d at 1291; *see also Toombs*, 574 F.3d at 1274–75 (making a similar observation after the district court had granted seven of the defendant's continuance requests). "[Moving] for many continuances, or otherwise indicat[ing] that [the defendant] is not pursuing a swift resolution of his case" will tip the balance of this factor "heavily against the defendant." *Gould*, 672 F.3d at 938.

The district court concisely assessed this component of *Barker*: it recognized Mr. Margheim's assertion of the right, observed that he asserted the right "relatively late in [the] case," and deemed the third factor unfavorable to him. R., Vol. I, at 769, 771. Mr. Margheim disputes this finding and argues that his assertion of the right "as early as October 18, 2010," Aplt. Opening Br. at 23, along with his 2012 motions to dismiss, compel the opposite result.

31

Viewing Mr. Margheim's assertion of the right "in the light of [his] other conduct" before trial, *Loud Hawk*, 474 U.S. at 314, we would be hard-pressed to call it "frequent" or "forceful." As explicated in Part II.B, *supra*, we do not believe the record demonstrates that Mr. Margheim pursued a speedy trial with any vigor during the time between his initial appearance and that of his last codefendant. We believe the same holds true regarding his subsequent conduct. For instance, it is difficult to overlook how late his motions to dismiss the indictment appear on the pretrial timeline. Mr. Margheim filed his first motion to dismiss approximately nineteen months after being indicted, *see* R., Vol. I, at 769, which means he spent the lion's share of the twenty-three-month delay pursuing continuances and other trial strategies. *Cf. Toombs*, 574 F.3d at 1274 ("By the time [Defendant] asserted his Sixth Amendment right, eight of the nine continuances, seven of which were requested by him, had already been granted and approximately seventeen months had passed since his first court appearance. Thus, this factor also weighs heavily against [him]."); *Batie*, 433 F.3d at 1292 ("[Defendant's] persistent requests for continuances, even when opposed, scarcely demonstrate a desire for a speedier process. Thus, this [third] factor weighs against [him]." (footnote omitted)). Contrary to Mr. Margheim's view, we do not believe his rapid-fire filing of these motions places him in the same situation as the defendant in *Seltzer*. Perhaps both Mr. Margheim and the *Seltzer* defendant "brought . . . repeated requests," but only the *Seltzer* defendant did so *promptly*.

*See* 595 F.3d at 1179 (observing that the defendant asserted his speedy-trial right twice within *six* months of being indicted).

While it is apparent that Mr. Margheim was not "interested in . . . avoiding [trial] altogether," *Tranakos*, 911 F.2d at 1429, it is equally obvious that he *was* interested in other time-consuming strategies for a significant portion of the delay period. Indeed, had Mr. Margheim focused completely on proceeding to trial, we find it doubtful that he would have severed ties with three attorneys. He did eventually "put both the district court and the government on notice that [he] wished to proceed to a prompt resolution of his case," *Seltzer*, 595 F.3d at 1179, but that "notice" was diluted by his previous conduct, *see Tranakos*, 911 F.2d at 1429 ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). In sum, we agree that the third *Barker* factor weighs in favor of the government.

**4**

*Barker*'s final factor is the extent to which the defendant was prejudiced by the delay. *See* 407 U.S. at 532; *Yehling*, 456 F.3d at 1244. In *Doggett*, the Supreme Court held that "affirmative proof of particularized prejudice [in the *Barker* analysis] is not essential to every speedy trial claim." 505 U.S. at 655. For cases involving extreme delay, the defendant may even "rely on the presumption of prejudice created by the extreme delay." *Toombs*, 574 F.3d at 1275. However, in most circumstances, failure to specify prejudice will

33

eviscerate the defendant's claim. *See id.* (distinguishing defendant's twenty-two-month delay from *Doggett*'s "extreme" eight-year delay); *see also Seltzer*, 595 F.3d at 1180 n.3 ("Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice.").

Mr. Margheim's case does not present the extreme circumstances obviating the requirement of a showing of prejudice. Thus, in assessing whether he has alleged prejudice with sufficient particularity, we focus on the interests the speedy-trial right was designed to safeguard: (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *accord Lott v. Trammell*, 705 F.3d 1167, 1174 (10th Cir.), *cert. denied*, --- U.S. ----, 134 S. Ct. 176 (2013). The interest given the most weight is the third, which implicates "the fairness of the entire system." *Barker*, 407 U.S. at 532; *accord Toombs*, 574 F.3d at 1275. Prejudice to the defendant in this regard will be "obvious" if witnesses die or disappear, or if witnesses lose their memory of events that are critical to the theory of defense. *See Barker*, 407 U.S. at 532; *see also Moore v. Arizona*, 414 U.S. 25, 27 n.2 (1973).

According to Mr. Margheim, he was prejudiced by the delay because, during that time, he (1) was incarcerated on "lockdown" for eighteen hours a day; (2) required anxiety and depression medication; and (3) lost track of a supposed eyewitness. The district court agreed as to the first point because Mr. Margheim

34

had been undeniably incarcerated since his arrest. This conclusion comports with our view that "prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim."[11] *Seltzer*, 595 F.3d at 1180.

Next, the district court determined that Mr. Margheim was prejudiced by his anxiety, depression, and heightened "awareness of . . . the unresolved charges against him." R., Vol. I, at 770 (quoting *Doggett*, 505 U.S. at 654) (internal quotation marks omitted). We could conceivably part company with the district court on this point. It is not clear that Mr. Margheim has "alleged any special harm suffered which distinguishes his case from that of any other arrestee awaiting trial." *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994); *see Larson*, 627 F.3d at 1211 (noting that "conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice"); *accord United States v. Santiago-Becerril*, 130 F.3d 11, 23 (1st Cir. 1997) (observing that "considerable anxiety normally

---

[11] The fact that Mr. Margheim was in custody for pending state charges at the time of his arrest, *see* R., Vol. I, at 732 n.1 (Gov't's Resp. to Def.'s Mot. to Dismiss, filed Apr. 16, 2012), arguably *could* support the opposite finding. *See Perez v. Sullivan*, 793 F.2d 249, 258 (10th Cir. 1986) (finding no oppressive pretrial incarceration when "[i]t [was] evident that [the defendant] would have remained incarcerated for the period of time in question whether or not [the] proceeding had been brought"). However, because Mr. Margheim had not been convicted of the state charges at that time (and because those charges were dismissed and did not result in a conviction), we do not gainsay that he suffered *some* prejudice from pretrial incarceration in his federal case—even if the amount was arguably *de minimis*.

35

attends the initiation and pendency of criminal charges; hence only undue pressures are considered" (internal quotation marks omitted)). Moreover, to the extent that Mr. Margheim claims increased anxiety due to the "threat" of a § 851 information, we have already determined that his prior felony drug conviction provided an appropriate statutory basis for such a filing; consequently, this cannot properly establish prejudice in the *Barker* context.

Nonetheless, viewed as a whole, the district court's prejudice analysis is sound and eliminates any need to split hairs over the anxiety-depression issue. In particular, germane to the prejudice factor that our caselaw accords the most weight (i.e., prejudice to the defense), the district court concluded that Mr. Margheim had *not* demonstrated any cognizable hindrance to his defense, "[whether] through expiration of evidence, loss of witnesses, or unique fading of memory." R., Vol. I, at 770. It thereby rejected Mr. Margheim's contention that he had lost track of "a girl at [his] house that would be able to testify that the informant along with the [undercover SA] just walked into [his] house." *Id.* at 661 (Mot. to Dismiss, filed Apr. 13, 2012). The district court reasonably concluded that this hypothetical testimony pertained only to Mr. Margheim's withdrawn motion to suppress, which was grounded in a Fourth Amendment unlawful-entry argument. Furthermore, Mr. Margheim has failed to demonstrate that the so-called missing witness's testimony was vital to his defense. In our view, his vague characterization of her hypothetical testimony does not suggest

36

that it would be exculpatory or otherwise material to his case. *See Tranakos*, 911 F.2d at 1429 (rejecting "lost-witness" claim when defendant failed to "state[] with particularity . . . what exculpatory testimony would have been offered" (omission in original) (quoting *United States v. Villano*, 529 F.2d 1046, 1060 (10th Cir. 1976)) (internal quotation marks omitted)). We have looked with disfavor on defendants' hazy descriptions of prejudice, *see Abdush-Shakur*, 465 F.3d at 466, and required criminal defendants to "show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense,"[12] *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998); *accord United States v. Madden*, 682 F.3d 920, 929 (10th Cir. 2012). Mr. Margheim's failure to make *any* specific allegations concerning this "witness" therefore cannot support a finding of prejudice. *See, e.g.*, *Tranakos*, 911 F.2d at 1429 (noting defendant's failure to show a "causal relationship" between absent witness and prejudice claimed (quoting *Perez*, 793 F.2d at 257 n.10) (internal quotation marks omitted)). As a result, the final *Barker* factor weighs against him.

We summarize our conclusions regarding the *Barker* factors as follows: only the first favors Mr. Margheim, the second is a draw, and the third and fourth

---

[12]     Mr. Margheim rejoins that he had no obligation to describe the missing witness's expected testimony with particularity. *See* Aplt. Reply Br. at 9. However, his citation to *Seltzer* on this point is inapposite. In *Seltzer*, while we concluded that the defendant's ability to prepare his case was impaired, we in no way suggested that he was relieved of the obligation to describe potential witnesses' testimony with particularity. *See Seltzer*, 595 F.3d at 1180.

37

favor the government. Balancing these factors, we reach the same conclusion as the district court—*viz.*, Mr. Margheim's constitutional speedy-trial right under the Sixth Amendment was not violated. Accordingly, we affirm.

**IV**

Because Mr. Margheim was not deprived of his statutory or Sixth Amendment right to a speedy trial, we conclude that the district court was correct not to dismiss the indictment, and we **AFFIRM** Mr. Margheim's conviction.[13]

---

[13] Volume 4 of the record, which includes transcripts of *ex parte* proceedings involving protected attorney-client communications, was provisionally filed in this court under seal. We conclude that the confidentiality concerns engendered by the contents of Volume 4 constitute the type of "real and substantial interest," *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)) (internal quotation marks omitted), that would justify maintaining documents under seal. Consequently, Volume 4 will remain under seal.