FILED
United States Court of Appeals
Tenth Circuit

October 12, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>MATTHEW CHANNON,<br><br>Defendant - Appellant.<br><br>_____ | No. 21-2027<br>(D.C. Nos. 1:19-CV-00200-TMT &<br>1:13-CR-00966-JCH-SMV-1)<br>(D. N.M.) |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>BRANDI CHANNON,<br><br>Defendant - Appellant. | No. 21-2028<br>(D.C. Nos. 1:19-CV-00201-TMT &<br>1:13-CR-00966-JCH-SMV-2)<br>(D. N.M.) |

_____

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

We have consolidated these appeals for purposes of disposition. Brandi and

Matthew Channon, proceeding pro se, each petition this court for a certificate of

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appealability ("COA") so they may appeal the district court's denial of their 28 U.S.C. § 2255 motions. We hold that the district court lacked jurisdiction over Brandi's motion and that Matthew does not qualify for a COA. We therefore deny their petitions and dismiss these matters.

## I.    BACKGROUND & PROCEDURAL HISTORY

The events leading to the Channons' federal prosecution took place in 2009 and 2010, when the Channons exploited weaknesses in OfficeMax's "MaxPerks" customer loyalty program to obtain OfficeMax products and prepaid gift cards worth more than $100,000. One part of the scheme took advantage of OfficeMax's process for allowing MaxPerks members to claim rewards when they forgot to present their MaxPerks cards at the register. OfficeMax's website allowed a customer to enter certain information from the receipt after the fact, thus crediting those purchases to the customer's MaxPerks account. Assuming most MaxPerks members would not go through that trouble and using educated guesses based on information gleaned from real OfficeMax receipts, the Channons claimed many other customers' purchases as their own.

MaxPerks members could also earn $3 in rewards for every used inkjet cartridge returned to an OfficeMax store, up to twenty per customer per month. The Channons purchased thousands of used cartridges on eBay for about $0.32 each. They then traveled to OfficeMax stores throughout the country and used their many fake MaxPerks accounts to turn in about 27,000 ink cartridges.

OfficeMax eventually discovered the Channons' scheme and demanded they

repay about $81,000, or else OfficeMax would take its information to the FBI. The Channons refused and OfficeMax contacted the FBI. The FBI searched the Channons' home. Matthew was not there at the time, but Brandi was, and she confessed. Later, a grand jury indicted the Channons on wire fraud and conspiracy charges.

Two federal public defenders represented Matthew at trial, and a CJA attorney separately represented Brandi. Matthew's attorneys decided the evidence against their client was too strong to meaningfully rebut, so they chose not to contest the facts underlying the government's case. They instead focused on persuading the jury that Matthew genuinely believed he was working within the MaxPerks terms and conditions, so he did not have the necessary intent to defraud. Brandi's attorney, for his part, moved (unsuccessfully) to suppress her confession. At trial, he attempted to minimize the confession but otherwise draw as little attention as possible to his client, hoping the jury would acquit her when it realized that most of the government's evidence focused on Matthew. Brandi's attorney also hoped to position his client for a non-custodial sentence (assuming conviction).

The jury convicted the Channons on all counts. The district court sentenced Matthew to one year plus one day in prison and two years' supervised release. The court sentenced Brandi to three years' probation. This court affirmed their convictions. *See United States v. Channon*, 881 F.3d 806, 809–11 (10th Cir. 2018).

Following our affirmance, the Channons filed timely § 2255 motions. Matthew's motion (not counting exhibits) spanned three docket entries and totaled

3

280 pages. Brandi's original motion ran to 293 pages (again, not counting exhibits). The district court struck these filings as overlong and needlessly verbose but granted leave to file amended motions of no more than forty pages each. The Channons complied. The amended motions asserted numerous grounds for relief, mostly based on ineffective assistance of counsel. Twenty of those grounds were identical as between the two motions. The government responded, attaching declarations from the Channons' attorneys explaining their actions and motives.

While these motions were pending, the District of New Mexico appointed one of Matthew's defense attorneys to be a magistrate judge. The district court then deemed it appropriate for all the district's judicial officers to recuse themselves. The Channons' cases were reassigned to Circuit Judge Timothy M. Tymkovich, sitting by designation. Judge Tymkovich denied the Channons' motions, finding they had not met their burden on the ineffective-assistance-of-counsel elements, and they had forfeited any grounds for relief not tied to ineffective assistance. He also denied a COA. The Channons then timely moved for a COA from this court.

## II.    JURISDICTION

The district court's jurisdiction turned on the Channons being "in custody under sentence of a court established by Act of Congress." 28 U.S.C. § 2255(a). "[A] habeas petitioner [must] be 'in custody' under the conviction or sentence under attack *at the time his petition is filed*." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam) (emphasis added) (interpreting § 2254); *see also United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) (applying this rule to § 2255). If this

4

condition is met, then the petitioner's release from custody before the court adjudicates his petition does not divest the court of jurisdiction to consider challenges to the conviction. *See Carafas v. LaVallee*, 391 U.S. 234, 238–39 (1968).

These principles create a potential jurisdictional problem for the Channons. The relevant timeline is as follows:

- **March 11, 2019.** Matthew and Brandi file their respective § 2255 motions challenging their convictions. At the time, Brandi is still serving her probationary sentence, which counts as "in custody" for § 2255 purposes, *see United States v. Condit*, 621 F.2d 1096, 1098 (10th Cir. 1980). Due to a court order postponing Matthew's self-surrender date, Matthew had yet to begin serving his prison term.

- **March 14, 2019.** The district court strikes the Channons' § 2255 motions as overlong, but grants leave to file amended motions by April 15.

- **March 22, 2019.** The district court grants Brandi's motion for early termination of probation.

- **April 15, 2019.** The Channons file their amended § 2255 motions.

- **May 2, 2019.** Matthew begins serving his prison sentence.

- **March 6, 2020.** Matthew discharges his prison sentence and begins supervised release.

- **December 3, 2021.** The district court grants Matthew's motion for

5

early termination of supervised release.

We have no trouble concluding that Matthew was "in custody" on April 15, 2019, when he filed his amended § 2255 motion. Although he had yet to begin serving his prison term, he was subject to conditions and restrictions similar to pretrial release or probation, and his upcoming prison term was certain. *Cf. Maleng*, 490 U.S. at 493 (holding that defendant under detainer for sentence he had not yet begun to serve was "in custody" for purposes of habeas attack).

Brandi is on different footing. She was "in custody" (on probation) when she filed her original § 2255 motion, but the court struck that motion. By the time she filed her amended § 2255 motion, she was no longer "in custody" because the court had terminated her probation. This raises the question whether Brandi's original motion still persisted in some sense, despite being stricken, such that her amended motion could relate back to the original and thus preserve her "in custody" status. We have not located a case from any jurisdiction addressing this fact pattern. But the party claiming jurisdiction has the burden of convincing the court that jurisdiction exists. *See Bustillos*, 31 F.3d at 933. Because Brandi has not addressed this jurisdictional barrier, she fails to carry that burden. We therefore hold that the district court lacked jurisdiction over her § 2255 motion, and we deny a COA on that basis. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) (holding that "we may deny a COA if there is a plain procedural bar to habeas relief, even though the district court did not rely on that bar," and applying this principle to deny a COA

6

where the district court lacked jurisdiction to hear the petitioner's habeas petition).[1]

## III.    ANALYSIS

We now turn to Matthew's claims.  This matter may not proceed unless we grant a COA, *see* 28 U.S.C. § 2253(c)(1)(B), and we may not grant a COA unless Matthew "ma[kes] a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2).  This means he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### A.    District Court Page Limits

Matthew claims the district court erred in striking his original motion and placing a forty-page limit on his amended motion.  We may not review this claim unless connected to the denial of a constitutional right.  *See United States v. Gordon*, 172 F.3d 753, 754 (10th Cir. 1999) ("[C]laims [raised in a § 2255 proceeding] may only be appealed . . . if they involve the denial of *constitutional* rights.").  The only mention of a constitutional right in this portion of Matthew's COA motion is a heading invoking the First Amendment right to petition the government for redress of grievances.  *See* Aplt. Combined Opening Br. and Appl. for Certificate of Appealability ("COA Motion") at 9.

---

[1] Even if the district court had jurisdiction over Brandi's § 2255 motion, we would deny her a COA.  Most of her arguments are identical to Matthew's, and Matthew does not qualify for a COA.  Brandi's one unique claim likewise would not qualify for a COA. *See infra* n.5.

"[T]his court has repeatedly instructed that stray sentences like these are insufficient to present an argument . . . ." *Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015). Accordingly, Matthew has not made a substantial showing that the district court's choice to strike his original § 2255 filings and impose a forty-page limit violated any constitutional right.

This outcome has implications for eight other grounds on which Matthew seeks a COA—namely, grounds 4, 6, 7, 8, 9, 10, 11, and 19. Matthew's sole argument concerning these grounds is that the district court would have reached a different result if it had consulted the stricken filings. Because we may not issue a COA to review the district court's decision to strike those filings, we likewise may not issue a COA as to these eight grounds.[2]

### B.    Ineffective Assistance of Counsel as the Gateway to Other Claims

Matthew's remaining grounds rely on alleged errors that could have been raised during his criminal trial or on direct appeal. "Ordinarily, failure to raise an issue either at trial or on direct appeal imposes a procedural bar to [§ 2255] review." *United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002). An exception applies to claims that trial or appellate counsel were constitutionally ineffective in failing to present those issues. *Massaro v. United States*, 538 U.S. 500, 509 (2003). With two exceptions—the stricken-filings argument already discussed and another

---

[2] We further note Matthew does not argue that the district court's forty-page limit amounted to a procedural termination of any claim on the merits.

argument we discuss at the end of this order (ground 13)—Matthew frames his grounds for relief as matters of ineffective assistance.

A defendant claiming ineffective assistance must establish two elements: (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) "the deficient performance prejudiced the defense," *id.* at 687. These elements create a mixed question of fact and law. *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). The district court is the decisionmaker, *see Strickland*, 466 U.S. at 690–91 (discussing the first element); *id.* at 694–96 (discussing the second element), subject to our de novo review if the defendant receives a COA, *Orange*, 447 F.3d at 796.

Pointing out the district court's decision-making role shows why this court may not grant a COA on six of Matthew's remaining grounds for relief, namely, grounds 2, 5, 17, 18, 20, and 21. Matthew claims he deserves a COA on these grounds because the district court cited no authority for deciding that he had not met one or both elements of the *Strickland* test.[3] But the district court had no obligation to cite authority. Indeed, *Strickland* emphasizes the case-by-case judgment needed for every ineffective-assistance claim, in contrast to relying on authorities (such as

---

[3] Grounds 18 and 21 also assert that the district court would have reached a different outcome if it had consulted the longer arguments in the stricken filings. These grounds fail for the additional reason that Matthew's stricken-filings argument raises no constitutional issue, as already explained.

ABA practice standards). *See* 466 U.S. at 688–90, 693. So, as to these six grounds,

Matthew has not made a substantial showing of the denial of a constitutional right.

**C.      Remaining Ineffective-Assistance Claims**

This leaves grounds 1, 3, 12, 14, 15, 16, and 22. The court will address them

in that order.

1.      Failure to Challenge the Second Superseding Indictment
        (Ground 1)

Matthew's criminal case went to trial on the second superseding indictment.

Count 1 of that indictment alleged that the Channons

> conspir[ed] and agree[d] to devise a scheme and artifice to
> defraud and for obtaining money and property by means of
> materially false pretenses and representations, and to
> transmit and cause to be transmitted certain wire
> communications in interstate and foreign commerce for the
> purpose of executing the scheme, in violation of 18 U.S.C.
> § 1343 . . . .

R. vol. 2 at 72, ¶ 10. The cited statute (§ 1343) describes the substantive wire fraud

offense.

After a little more than two pages of detail about the alleged scheme, count 1

concluded with, "In violation of 18 U.S.C. § 1349." *Id.* at 74. That statute proscribes

conspiracy "to commit any offense under this chapter," including wire fraud.

In the § 2255 proceeding, Matthew pointed out that count 1 cited both § 1343

and § 1349 and asked, "So which one was it?" R. vol. 1 at 17. The district court

construed this as an argument that Matthew's attorneys were ineffective because they

failed to move to dismiss the indictment as indefinite. *Cf. Hamling v. United States*,

418 U.S. 87, 117 (1974) (discussing the claim that "the indictment failed to give [the defendants] adequate notice of the charges against them").  The court rejected the argument, finding it "reasonably clear" that the indictment listed § 1343 as the underlying offense justifying the § 1349 conspiracy charge.  R. vol. 1 at 230.  The court alternatively found that the indictment's caption clears up any possible confusion because it states, "Count 1: 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud."  *Id.* (quoting R. vol. 2 at 70).

Here, Matthew says the district court "miss[ed] the point entirely that the judgment listed [count] 1 as under § 1343 and the discrepancy was the root of the Ground."  COA Motion at 10.  He is correct that, for whatever reason, the judgment specifies § 1343 and "Wire Fraud" as the offense of conviction under count 1, R. vol. 2 at 144, which he pointed out in his § 2255 motion, R. vol. 1 at 17.  But he raised this argument to illustrate count 1's alleged indefiniteness, not as the "root" of a separate ground for relief.  Even if it was meant as a separate ground, Matthew never connected it to the ineffective assistance of his counsel, such as an error committed at sentencing.[4]

Regardless, count 1 is not indefinite.  Federal criminal indictments typically specify the statutory basis of the offense at the end of each count.  Count 1 follows that pattern, citing the conspiracy statute (§ 1349).  The earlier citation to the wire

---

[4] Regardless, any claim based on error at the sentencing phase would now be moot because Matthew has completely discharged his sentence.  *See Walker v. United States*, 680 F.3d 1205, 1205–06 (10th Cir. 2012).

fraud statute (§ 1343) identifies the underlying offense the Channons conspired to commit. Ground 1 therefore does not present a substantial question of ineffective assistance because counsel had no meritorious motion to bring in this regard.

### 2. The Alleged Jury Nullification Strategy (Ground 3)

As presented to the district court, ground 3 alleged that Matthew's counsel should have highlighted a change to the MaxPerks terms and conditions that OfficeMax implemented in 2010, in the middle of the Channons' scheme (apparently while still unaware of the scheme). Matthew claimed that highlighting this change would have strengthened his good-faith defense, whereas his attorneys believed the opposite. The district court rejected this claim as a non-actionable disagreement with counsel's trial strategy.

Matthew tells us that the district court "failed to understand that [his] counsel's strategy was an appeal to jury nullification." COA Motion at 10. He cites nothing in the record showing he accused his attorneys of pursuing a jury-nullification strategy in district court, nor can we find any mention of jury nullification in the record. "[A]s to issues that were not presented to the district court, we adhere to our general rule against considering issues for the first time on appeal." *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012). We therefore deny a COA on this issue.[5]

---

[5] Brandi's ground 4—her only claim that does not entirely overlap with one of Matthew's claims—is nonetheless similar to Matthew's ground 3. She alleges the district court failed to recognize that her own attorney's trial strategy (as opposed to Matthew's attorney's trial strategy) was really an appeal to jury nullification. Again, we can find

### 3.    Inadequate Challenge to Spreadsheet Evidence (Ground 12)

At trial, the government relied heavily on spreadsheets purporting to detail the Channons' fraudulent transactions.  The Channons' counsel objected to the spreadsheets on various grounds, including that they were hearsay and not admissible under the business records exception (Fed. R. Evid. 803(6)) because the government supposedly created the spreadsheets for litigation purposes.  The district court overruled this objection, and counsel raised it again on direct appeal.  We affirmed, holding that the spreadsheets contained machine-generated non-hearsay (so no hearsay exception was needed) and, alternatively, the spreadsheets satisfied the business records exception.  *See Channon*, 881 F.3d at 810–11.

In his § 2255 motion, Matthew faulted his counsel for attacking the business records exception in the wrong way.  Rather than arguing the exception does not apply because the spreadsheets were created for litigation purposes, Matthew said that counsel should have emphasized evidence showing "the method or circumstances of preparation indicate a lack of trustworthiness," Fed. R. Evid. 803(6)(E).  The district court rejected this argument as irrelevant given this court's primary holding that no hearsay exception was needed.

On appeal, Matthew continues to press their argument that counsel should have emphasized Rule 803(6)(E).  He says nothing about this court's holding that the

---

nothing in the record showing that Brandi made this argument to the district court.  Thus, even if the district court had jurisdiction to consider it, we would deny a COA on Brandi's ground 4.

13

spreadsheets comprised non-hearsay. He therefore fails to raise any substantial question of ineffective assistance.

#### 4.    Failure to Object to Elements Jury Instruction (Ground 14)

The trial court based its jury instruction for conspiracy to commit wire fraud on this circuit's pattern instruction for conspiracy to commit a controlled substance offense, often copying that instruction verbatim where applicable. *Compare* Pattern Crim. Jury Instr. 10th Cir. 2.87 *with* R. vol. 2 at 89–90. One of those verbatim passages was the following, explaining the interdependence element of the conspiracy charge:

> You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his or her actions constituted an essential and integral step toward the realization of that purpose.

*Id.* at 90.

In his § 2255 motion, Matthew pointed out that the first sentence of this passage does not begin with a qualifier, *e.g.*, "In order to find the defendant guilty." Thus, it arguably reads as a command that the jury find interdependence. Matthew faulted his counsel for not objecting on this point. The district court held, however, that no reasonable jury reading the sentence in context would interpret the instruction as the Channons now do.

Matthew faults the district court for failing to cite authority for what a reasonable jury would do, but the district court had no such duty. Just as the court

14

may decide whether enough evidence exists for a reasonable jury to convict, *see* Fed. R. Crim. P. 29(a), the court may decide whether a reasonable jury could have misinterpreted a jury instruction, *see, e.g.*, *Gardner v. Galetka*, 568 F.3d 862, 894 (10th Cir. 2009).  We may not issue a COA on this basis.

> ### 5.    Failure to Move to Dismiss Under the Speedy Trial Act (Ground 15)

Matthew argues he had a strong case to dismiss the indictment under the Speedy Trial Act, so counsel was ineffective for failing to bring such a motion.

The Speedy Trial Act requires criminal trials to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  For Matthew, the relevant date was April 12, 2013, when he first appeared before a judicial officer.  So April 12, 2013, was "day zero" and the Speedy Trial clock began running.  *See* Fed. R. Crim. P. 45(a)(1)(A).  The Speedy Trial clock stopped on January 13, 2016, when jury selection began.  *See United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997) ("For purposes of the [Speedy Trial Act], a jury trial commences with the voir dire."), *abrogated in part on state-law grounds by State v. Gould*, 23 P.3d 801 (Kan. 2001).  That makes 1,006 days.

But the Speedy Trial Act pauses the clock in various situations.  Two of those situations occurred in Matthew's criminal proceedings:

- "delay resulting from any pretrial motion, from the filing of the motion

through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(D); and

- "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A), commonly known as an "ends-of-justice continuance" or "EOJ continuance."

The question is whether more than seventy Speedy Trial days elapsed, even accounting for these tolling situations.

The court has reviewed the Channons' criminal docket. Twenty-three Speedy Trial days elapsed between Matthew's arraignment on April 12, 2013 (not counting that date) and May 5, 2013. The next day, May 6, the government filed a pretrial motion (specifically, a motion to continue the trial, which was then set to begin May 20). So, beginning May 6, the Speedy Trial clock was suspended based on a pending motion.[6] The district court granted that motion, rescheduled the trial to begin July 22, 2013, and granted an EOJ continuance through that date. Before the new trial

---

[6] Despite Fed. R. Crim. P. 45(a)(1)(A), the pending-motion exception counts the day the motion was filed as day one of the tolling period, not day zero. *See United States v. Margheim*, 770 F.3d 1312, 1322 (10th Cir. 2014).

date arrived, the court granted another motion to continue, rescheduled the trial to begin on October 21, 2013, and entered a second EOJ continuance through that date.

In a scheduling order entered August 28, 2013, the court continued the October 21 trial to January 21, 2014, but did not enter a new EOJ continuance. Thus, the second EOJ continuance expired by its own terms on October 21.[7] No pretrial motion was pending at that time, so the Speedy Trial clock began to run again the next day, October 22, 2013.

The Speedy Trial clock continued to run through October 27, 2013, *i.e.*, for six days. On October 28, 2013, the Channons moved to continue the January trial setting. From that date forward, an unbroken chain of pending motions and EOJ continuances spanned the gap until trial began on January 13, 2016.

In short, the Speedy Trial clock ran for twenty-three days in one stretch, for six days in another stretch, and was otherwise tolled—so Matthew went to trial within seventy Speedy Trial days. He therefore has not made a substantial showing of ineffective assistance because his counsel could not have brought a meritorious Speedy Trial motion.

### 6. Failure to Subpoena OfficeMax (Ground 16)

Matthew argues that his counsel should have subpoenaed OfficeMax's financial records before trial so he could prove to the jury that OfficeMax profited

---

[7] Matthew appears to believe the August 28 scheduling order restarted the Speedy Trial clock as of August 29. But the scheduling order says nothing about the then-persisting EOJ continuance.

from the inkjet cartridge recycling program.  The district court held that counsel reasonably chose not to seek such a subpoena because the defense had developed information on its own suggesting that OfficeMax profited from the recycling program and it was better to argue from that information rather than subpoenaing OfficeMax and risking receiving data that would undercut the argument.[8]

Matthew says that his counsel's tactical decision was "ridiculous."  COA Motion at 12.  Such epithets do not raise a substantial question of the denial of a constitutional right.

### 7.    Failure to Pursue the "SDerClub" Defense (Ground 22)

Matthew says he bought OfficeMax store credits from an entity known as "SDerClub," whose website the federal government later seized and shut down, accusing the entity of fraudulently generating those credits.  Matthew's purchases coincided with transactions underlying counts 6 and 7 of the second superseding indictment.  Matthew encouraged his attorneys to develop a case that SDerClub was the fraudulent actor, not him.  His attorneys refused because there was other evidence linking him to the transactions underlying counts 6 and 7, and an attempt to place blame elsewhere would undermine the trial strategy of admitting the facts but denying their illegality.  The district court accepted this explanation as reasonable

---

[8] Matthew's counsel further stated that he subpoenaed OfficeMax's records at the sentencing phase and learned that they "hurt [their] argument rather than supported it."  R. vol. 1 at 110, ¶ 13.  Matthew disputes this, asserting (without citation) that the records showed a net financial gain.  The dispute is immaterial because ineffective assistance must be judged "from counsel's perspective at the time" counsel made the decision in question.  *Strickland*, 466 U.S. at 689.

and also held that there was no reasonable probability this defense would have changed the jury's verdict.

Matthew now argues that the district court's reasoning "ignores [his] interest in getting counts 6 and 7 dismissed or acquitted." COA Motion at 13. We see no such error. In any event, this claim reduces to a disagreement about trial strategy. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). On this record, Matthew has not raised a substantial question of overcoming that presumption.

### D. Vindictive Prosecution (Ground 13)

Finally, Matthew claims the prosecutor sought the superseding indictments vindictively, because the Channons would not accept earlier plea deals. The district court deemed this ground forfeited because the Channons did not raise it on direct appeal or connect it to ineffective assistance of counsel. In support, the court cited *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006), which states, "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review."

The district court's disposition was procedural, without reaching the underlying constitutional claim. In that circumstance, we may not issue a COA unless "the prisoner shows, at least, that jurists of reason would find it debatable

19

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Matthew says the district court relied on *Sanchez-Llamas* "as some sort of talisman against any argument outside ineffective assistance of counsel." COA Motion at 12. He does not explain, however, what exception to *Sanchez-Llamas*'s general rule they intended to assert. Thus, he has not made a substantial showing that the district court erred in imposing a procedural bar to this claim.

## IV.    CONCLUSION

Matthew's petition does not meet the COA standard and the district court lacked jurisdiction over Brandi's § 2255 motion, so we deny a COA as to both. We grant their motions to proceed without prepayment of costs and fees. Regarding their motions to supplement the record, we deny them as moot to the extent they duplicate this court's *sua sponte* orders to supplement the record, and otherwise deny them as unnecessary to resolve this proceeding. Finally, we deny as moot their motions to disqualify Judge Tymkovich and Judge Kelly. Judge Tymkovich is automatically recused from this case and Judge Kelly was not assigned to this panel, nor did he participate in this proceeding informally.

Entered for the Court
Per Curiam
