FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

AARON KEITH, a/k/a AK, a/k/a Keke,

     Defendant - Appellant.

No. 21-6158

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CR-00260-SLP-45)**

_____

Gail K. Johnson of Johnson & Klein, PLLC, Boulder, Colorado, for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, United States Attorney; David McCrary, Assistant United States Attorney; and Nick M. Coffey, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

In our legal system, criminal defendants have a right to a speedy trial—they cannot languish in pretrial detention. The Sixth Amendment and the

Speedy Trial Act (STA) say as much. But the onus is on defendants to "spot[] violations of the [STA]." *Zedner v. United States*, 547 U.S. 489, 502 (2006) (discussing 18 U.S.C. § 3162(a)(2)). After months of delay in his drug-conspiracy prosecution, Aaron Keith unsuccessfully moved to dismiss the indictment on speedy-trial grounds. After his motion was denied, a jury convicted him of all charges. He now renews those speedy-trial arguments.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.    Factual Background

Keith joined the Irish Mob Gang (IMG), a prison gang, while serving an Oklahoma state sentence. Like many gangs, the IMG was in the drug trade. From their prison cells, Keith and his IMG confederates coordinated large drug transactions outside of prison. Using contraband cell phones, members acted as intermediaries between drug suppliers and buyers on the outside. In November 2018, during its ongoing investigation into the IMG, the FBI wiretapped an IMG leader's cell phone. Many conversations recorded on the wiretap implicated Keith in the gang's drug dealing. Keith's role in the conspiracy was nearing its end.

### II.    Procedural Background

In October 2018, in the first of three indictments, a federal grand jury charged 39 IMG members and affiliates with drug conspiracy and other drug and money-laundering offenses. Keith wasn't among the indicted defendants.

Given the conspiracy's reach and the extensive discovery involved, the government moved to declare the case complex and to continue the trial. The district court granted the unopposed motion after finding under the STA that the "ends of justice" outweighed the public's and defendants' interests in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A). In a separate scheduling order, the court set trial for February 11, 2020.

On December 12, 2018, the grand jury returned a superseding indictment, this time naming 55 defendants, including Keith. Keith was charged with drug conspiracy and possessing methamphetamine with intent to distribute. He was arraigned on December 19, at which time the STA clock began. According to the prior scheduling order, each newly indicted defendant had two weeks after being arraigned to object to the proposed schedule. "A failure to object," cautioned the court, "will be deemed a Defendant's acknowledgment and approval of [the complex-case designation] and the scheduling deadlines." Keith didn't object, tacitly consenting to the February 2020 trial date.

### A.    Pretrial Delays

A year passed without incident. But on January 6, 2020, with only six defendants remaining for trial, two of Keith's codefendants moved to continue the trial to August 2020. Citing their newly appointed counsels' need to review discovery and prepare for trial, the two defendants informed the court that "[a]ll parties have conferred and are in agreement with this requested continuance." Suppl. R. at 678–79. Keith didn't object, so the court made new

3

"ends-of-justice" findings and continued the trial to August 11, 2020. In determining that the continuance wouldn't prejudice the defendants, the court mistakenly understood that Keith and the other defendants were serving state sentences. But in fact, Keith had completed his state sentence two weeks earlier and was seeking a federal detention hearing.

Though the parties didn't know it yet, a global pandemic was looming. Once COVID-19 made an August 2020 trial date uncertain, the government and the four remaining defendants submitted a joint status report. There, the parties detailed

> (1) that the defendants would be ready for trial in August but wanted it to be conducted "as 'normally' as possible";
> (2) that the U.S. Marshals Service might encounter problems serving defense subpoenas;
> (3) that there could be logistical challenges, such as the need for a Spanish-language interpreter for one defendant;
> (4) that COVID-19-related prison restrictions made it difficult for the government to prepare its several in-custody witnesses;
> (5) that the government proposed three separate trials to maintain proper social distancing, but that Keith and a codefendant objected to being tried separately; and
> (6) that the government didn't think an August trial was possible.

A week after filing the status report, the government obtained a second superseding indictment against seven defendants, including the four from the status report. The second superseding indictment charged Keith with one count of drug conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and one count of possessing methamphetamine with intent to distribute in violation of § 841(a)(1), (b)(1)(A).

4

In July, the government moved to continue the trial from August to November 2020, citing COVID-19's effect on trial preparations and a need for extra time for plea negotiations. The government advised the court that Keith didn't object to this continuance. Indeed, Keith had rejected the government's offer to be tried alone in August; the government reported that Keith "would rather wait and be tried with" his codefendants. Agreeing with the government's proffered reasons and making another ends-of-justice finding, the court granted the motion and reset trial for November 3, 2020.[1]

On November 4,[2] the parties selected a twelve-member jury and four alternates. But the court did not swear in the jury. Several Deputy U.S. Marshals had been exposed to COVID-19, which hindered transport of the many in-custody witnesses, so the court told the jury to return on November 9 to be sworn. When two jurors noted that they had conflicts on November 9, the court pushed the trial date to November 10. At last, everything was in line for trial.

---

[1] Between July and November, three of the seven remaining defendants pleaded guilty. Of the last four defendants, two apparently were never arrested, making Keith and Christopher Gunn the last defendants remaining. Keith and Gunn would eventually be tried jointly.

[2] Though the court's scheduling order had set trial for November 3, 2020, jury selection did not begin until November 4. The court had continued the trial to its "November 2020 trial docket," which ended up falling on November 4.

Unfortunately, COVID-19 had other plans. On November 6, a juror notified the court of a positive test for the virus, prompting the court on November 9 to postpone trial until at least November 30 under public-health protocols. In response, on November 16, the government moved to excuse the jury and begin later with a separate jury panel. The government hypothesized that a 26-day delay risked the jury's being too distracted by COVID-19 and potentially having researched the case beforehand. In one sentence, Keith objected to the government's motion.[3] Ultimately, the court granted the motion on November 23. It cited the Western District of Oklahoma's latest General Order 20-26, which prospectively suspended jury trials throughout December. Based on this court-wide order, the court noted that the original jury, if unexcused, would be held in limbo for over two months. Excusing the jury without declaring a mistrial, and making another ends-of-justice finding, the court continued the trial to January 12, 2021.

On January 5, 2021, the Chief District Judge issued General Order 21-1, suspending jury trials through February. The next day, concerned about these and future delays, the district court sua sponte continued Keith's trial again after entering new ends-of-justice findings. "Given all of the logistical issues

---

[3] Keith did not explain why he was objecting. R. vol. 1, at 447 ("COMES NOW, Defendant Aaron Keith, by and through counsel, and objects to Plaintiff's Motion for Order Excusing the Current Jury and Restarting Jury Selection and requests this Court deny the Motion.").

involved," the court announced, "a more realistic and 'firm' date for this trial is in May 2021." So May 11, 2021, became the new trial date.

On January 21, Keith and Gunn jointly moved to dismiss the indictment on statutory and constitutional speedy-trial grounds. Despite the pandemic, they now took a view that "life goes on"—so too should the courts. Arguing that the court could mitigate COVID-19 concerns by "implementing recommended safety protocols," Keith and Gunn contested the need for any of the three ends-of-justice continuances. And as for the Sixth Amendment, they maintained that all four *Barker* factors supported dismissal. The court denied their motion in a fifteen-page order.

## B.    Trial and Sentencing

On May 11, 2021, a jury trial finally began. Over five days, the government called 25 witnesses, including several former IMG members. Keith rested without presenting evidence or calling witnesses. Before closing arguments, Keith objected to the proposed jury instructions for not including a multiple-conspiracies instruction. Citing *United States v. Davis*, 995 F.3d 1161 (10th Cir. 2021), the court overruled his objection.

In the end, the jury convicted Keith on both counts. From a total offense level 43 and a criminal-history category VI, Keith faced an advisory guideline of life imprisonment. Varying downward, the court sentenced him to 480 months' imprisonment. Keith's timely appeal followed.

## DISCUSSION

Keith raises two appellate issues: (1) whether the 29-month interval in bringing the case to trial violated his statutory or constitutional speedy-trial rights and (2) whether the district court abused its discretion by not giving a multiple-conspiracies jury instruction. He acknowledges that the latter issue is foreclosed by our precedent and raises it only to preserve it. We discuss these issues in turn.

## I.    Speedy-Trial Rights

Keith claims that the district court's five continuances of his trial date violated his speedy-trial rights under the STA and the Sixth Amendment. Our standard of review for the denial of a speedy-trial motion to dismiss is twofold. We review STA issues (including a district court's decision to grant an ends-of-justice continuance) for abuse of discretion, and we review constitutional speedy-trial issues de novo. *United States v. Banks*, 761 F.3d 1163, 1174–75 (10th Cir. 2014) (citations omitted). Within the STA abuse-of-discretion framework, we review the district court's compliance with the STA's legal requirements de novo and its factual findings for clear error. *Id.* (citing *United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009)).

### A.    Speedy Trial Act

Keith argues that the district court's ends-of-justice continuances violated the STA.

8

To effect the constitutional right to a speedy trial, the STA requires that a federal criminal defendant be tried within 70 days of the indictment or initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the defendant isn't tried within those 70 days, the court must dismiss the indictment on the defendant's motion. § 3162(a)(2). But this 70-day timeline has many exemptions that blunt the STA's stringent remedy. Relevant here is the STA's ends-of-justice continuance, under which a district court can exclude time if it sufficiently explains on the record why "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A). This exception is "meant to be a rarely used tool for those cases demanding more flexible treatment." *Toombs*, 574 F.3d at 1269 (quoting *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989)).

From December 19, 2018, to May 11, 2021, the court approved five ends-of-justice continuances, divisible into five periods of delay. And a sixth period occurred in November 2020 between the first jury panel's selection and its excusal. The court excluded all 873 calendar days between arraignment and trial from Keith's 70-day STA clock. We provide a chart below as a handy reference for the timeline, and we then discuss each period individually.

| Period of Delay | District-Court Explanation for Delay | Challenged in Keith's Motion to Dismiss? |
|---|---|---|
| First continuance 12/19/2018 – 02/11/2020 418 days | Need for preparation in this complex case with many defendants and vast discovery | No. |
| Second continuance 02/11/2020 – 08/11/2020 182 days | Two codefendants had new attorneys who needed time to prepare for trial | No. |
| Third continuance 08/11/2020 – 11/04/2020 85 days | Logistical and safety challenges because of COVID-19 and more time for plea negotiations | Yes. |
| First jury panel selected 11/04/2020 – 11/23/2020 19 days | Trial put on hold because a juror contracted COVID-19 | Yes. |
| Fourth continuance 11/23/2020 – 01/12/2021 50 days | W.D. Okla. General Order 20-26 (no jury trials in December) | Yes. |
| Fifth continuance 01/12/2021 – 05/11/2021 119 days | W.D. Okla. General Order 21-1 (no jury trials through February) | Yes. |

*First*, after determining that the case's complexity warranted an ends-of-justice finding, the court in a scheduling order set trial for February 11, 2020. Though invited to object to this schedule, Keith did not.

*Second*, in January 2020, two codefendants moved to continue the trial because their newly appointed counsel needed time to prepare for trial. Keith agreed to the continuance. The court made an ends-of-justice finding and reset trial for August 11, 2020.

*Third*, in July 2020, the government moved to continue the trial because of COVID-19's effect on trial preparations and the need for extra time for plea negotiations. Keith didn't object. In fact, he rejected the government's offer to

be tried alone in August. The court made an ends-of-justice finding and reset trial for November 3, 2020.

*Fourth*, after a juror on the first panel contracted COVID-19, requiring that the trial be delayed until at least November 30, the government moved to excuse the jury. Keith objected without giving a reason. The court made an ends-of-justice finding and continued the trial to January 12, 2021.

*Fifth*, after the Western District of Oklahoma by general order suspended jury trials in January and February, the court made a sua sponte ends-of-justice finding and continued the trial to May 11, 2021. Only then—on January 21—did Keith move to dismiss on speedy-trial grounds, which the court denied. Trial began on May 11, 2021.

### 1.    Waiver

On appeal, Keith attacks all five ends-of-justice continuances as improper and unsupported by the court's ends-of-justice findings. Before we address his arguments, we examine two key precedents to determine the proper scope of our review, considering whether Keith waived challenges to any of the five continuances.

#### a.    Under *United States v. Loughrin*, Keith waived his challenges to the first and second continuances.

The STA has a waiver provision: If the defendant fails to "move for dismissal prior to trial," he waives any argument for dismissal under the STA. 18 U.S.C. § 3162(a)(2). And even if the defendant does file an STA-based

11

motion to dismiss, he still preserves for appeal only arguments about contested excluded time identified in the motion to dismiss. *United States v. Loughrin*, 710 F.3d 1111, 1121 (10th Cir. 2013) (citation omitted), *aff'd on other grounds*, 573 U.S. 351 (2014). In other words, a defendant's STA-based motion to dismiss must challenge each continuance disputed on appeal. *Id.* We cannot review any unpreserved STA arguments, even for plain error. *Id.* (citation omitted). This rule makes sense—we want defendants to "adequately develop[]" their arguments and "give the district court the opportunity to further explain its reasoning for granting a continuance." *Id.* (citation omitted).

Keith's motion to dismiss (filed January 21, 2021) did not challenge either the first continuance after the court's complex-case designation (covering the time between his arraignment on December 19, 2018, and February 11, 2020) or the second continuance related to his codefendants' new counsel (covering the time between February 11, 2020, and August 11, 2020). As for the first continuance, his motion to dismiss accepted the validity of the district court's scheduling order. And as for the second continuance, his motion to dismiss acknowledged that this delay was "necessitated" by the codefendants' entry of new counsel and that "it was in the best interests of all the Defendants not to oppose the requested continuance." So that left Keith's motion to dismiss as contesting just the third, fourth, and fifth continuances, all of which related to COVID-19. That means he conceded as excludable time the interval between his initial appearance and August 11, 2020—the trial date set after the second

12

continuance and the beginning of the *third* period of delay. This is also how the district court interpreted the motion to dismiss. R. vol. 1, at 499 ("Here, the focus of Defendants' challenge is the continuances since August 11, 2020 . . . .").

Yet on appeal, Keith asks us to find STA violations from the first and second continuances, too. We hold that Keith has waived any objection to these two periods of delay. *See Loughrin*, 710 F.3d at 1121. Because of this waiver, we eliminate from consideration the time from Keith's arraignment on December 19, 2018, to August 11, 2020—600 days.[4] *See id.* ("Accordingly, the [waived time period] at issue here do[es] not count toward Loughrin's seventy-day tally."). That leaves us with 85 calendar days during the third delay, 50 days during the fourth delay, and 119 days during the fifth delay.[5]

---

[4] The STA clock starts on "day zero." *United States v. Channon*, No. 21-2027, 2022 WL 6872077, at *6 (10th Cir. Oct. 12, 2022) (unpublished) (citing Fed. R. Crim. P. 45(a)(1)(A)); *see also United States v. Margheim*, 770 F.3d 1312, 1317, 1319, 1321 (10th Cir. 2014) (counting 356 days between May 24, 2011, and May 15, 2012).

[5] Raising a separate ground for waiver, the government contends that Keith has waived any ability to contest the first *three* continuances because he did not move to dismiss before his original trial proceedings in November 2020. § 3162(a)(2). But the government provides no authority that this statutory provision applies when the jury is ultimately excused without a mistrial and months later another jury is selected and trial completed. We need not rule on this question to affirm.

13

      **b.     Under *United States v. Nevarez*, Keith waived his challenge to part of the fifth continuance.**

Another key case limits Keith's speedy-trial arguments for unexcludable time, this time looking forward—not backward—from his motion to dismiss. After Keith's appeal was fully briefed, we decided *United States v. Nevarez*, 55 F.4th 1261 (10th Cir. 2022). There, the district court continued Felipe Nevarez's criminal case several times for ends-of-justice reasons even before COVID-19 led to more ends-of-justice continuances. *See id.* at 1262. The parties and the court agreed that the deadline to begin trial without an STA violation was February 18, 2021. *See id.* at 1265. In other words, the 71st day would be February 19.[6] *See id.* At a status conference on February 17, Nevarez's counsel orally objected to any trial being beyond the STA's 70-day mark. *Id.* at 1263–64 ("Mr. Nevarez objects to his trial being beyond speedy trial, *which, of course, is tomorrow*."). The district court noted the oral objection. *Id.* at 1264. Soon after, the government moved to continue the trial and to exclude time under the STA, and the court continued the trial to April 2021. *See id.* at 1262, 1265.

---

[6] The record in *Nevarez* reveals that in November 2020, the district court chose to continue the trial to February 18 because it had calculated February 18 as the 70th unexcluded day. But it then excluded all time up to February 18 from the STA clock, so none of that time ultimately counted toward the 70 days. Neither the government nor Nevarez challenged this on appeal. *See Nevarez*, 55 F.4th at 1265 n.2 ("We need not determine the date when a violation of the [STA] would have occurred in this case . . . .").

14

On appeal, Nevarez and the government disagreed about whether an oral motion could suffice to preserve the STA issue for appellate review. *See id.* at 1263–64. But we passed over that issue (whether a written motion was required) and affirmed on an alternative ground: that the motion to dismiss was premature. *Id.* at 1265. Adopting the Sixth Circuit's approach, we ruled that

> [m]eeting the requirements of § 3162(a)(2) is not simply a question of presenting a "motion" in a form that this Court deems satisfactory, it is also a question of presenting it at the right time. Premature motions will not suffice. An actual violation of the [STA] must exist *at the time the motion is made*. After all, "a motion for dismissal under the [STA] is effective only for periods of time which antedate its filing." When a defendant moves to dismiss an indictment based on an [STA] violation that has yet to occur, that motion cannot succeed and "'the right to challenge any subsequent delay is waived' unless the defendant brings a new motion to dismiss."

*Id.* at 1264–65 (cleaned up) (quoting *United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014)).

Nevarez waived a challenge to the latest continuance because to reach 71 days, his motion needed to incorporate unexcluded time in the future. To prevail on an STA-based motion to dismiss, Nevarez had to "challenge the continuance on day seventy-one (or later), a course [he] never took." *Id.* at 1265 (quoting *Sherer*, 770 F.3d at 411). So Nevarez's motion challenging future delay was "premature" by two days, and by not moving to dismiss later, when that delay had happened, he waived his STA challenge for that interval. *Id.*

15

Applying this rule here, we note that, as in *Nevarez*, Keith's motion to dismiss is partially based on a claim of future unexcludable time (after January 21, 2021). So it fails, too. After all, Keith couldn't move to dismiss "based on a[n] [STA] violation that ha[d] yet to occur"; he could look only backward for unexcludable time. *See id.* at 1264–65 ("A motion for dismissal under the [STA] is effective only for periods of time which antedate its filing." (cleaned up) (quoting *Sherer*, 770 F.3d at 411)). To avoid waiving a challenge to the 110 days' delay that postdated his motion, Keith needed to file another motion to dismiss—"a course [he] never took." *Id.* at 1265 (quoting *Sherer*, 770 F.3d at 411).

But Keith's arguments about *past* unexcludable time are still fair game. In his motion to dismiss, he also asserted an "actual violation" of the STA based on the district court's past determinations of excluded time in its ends-of-justice findings. *Id.* For past excluded time, Keith argues that the continuances violated § 3161(h)(7) and that the sum of those prior delays exceeded 70 days. *Zedner*, 547 U.S. at 509 ("Because this [invalid] continuance by itself exceeded the maximum 70–day delay provided in § 3161(c)(1), the [STA] was violated . . . .").

Under *Nevarez*, Keith's universe of possible unexcludable time on appeal has thus shrunk to 85 calendar days during the third period of delay, 50 days during the fourth period of delay, and 9 days during the fifth period of delay.

16

## 2. The First "Trial"

Having bookended Keith's STA challenge with *Loughrin* and *Nevarez*, we must now decide how to treat the ill-fated November 2020 trial proceedings. How do we regard the 19 days between the first jury's being selected on November 4 and its being excused on November 23: as excludable or unexcludable STA time? Under the STA, trial must "commence" within 70 days from the initial appearance. § 3161(c)(1). And we have held that, for STA purposes, "a jury trial commences with the voir dire." *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997), *abrogated in part on state-law grounds by State v. Gould*, 23 P.3d 801 (Kan. 2001).

*Arnold* didn't involve post-voir dire delay, but *United States v. Martinez* did. There, the parties selected a jury on September 26, but they didn't begin opening statements until October 25. 749 F.2d 601, 604 (10th Cir. 1984), *abrogated on other grounds by Mathews v. United States*, 485 U.S. 58 (1988). With 29 days' delay between these two events, the parties disputed when the trial had "commenced" under § 3161(c)(1). *Id.* We held that trial began "when the jury was selected." *Id.* And because the STA clock stopped running at jury selection, we concluded that the government had commenced trial within 70 days. *See id.* at 604–05.

Other circuits agree. *See United States v. Gonzalez*, 671 F.2d 441, 443–44 (11th Cir. 1982); *United States v. Stayton*, 791 F.2d 17, 19–20 (2d Cir. 1986); *Gov't of Virgin Islands v. Duberry*, 923 F.2d 317, 321 (3d Cir. 1991); *United*

*States v. Brown*, 819 F.3d 800, 810 (6th Cir. 2016). But those circuits "will not hesitate to find that a trial has not actually 'commenced' within the requisite time" if they "perceive an intent to merely pay the [STA] lip service." *Gonzalez*, 671 F.2d at 444. Here, the district court's 19-day delay after voir dire wasn't a dodge around the STA. The court delayed swearing in the jury for five days because several Deputy U.S. Marshals had been exposed to COVID-19, hindering transport of in-custody witnesses; delayed it another day because of juror scheduling conflicts; and delayed it further because a juror contracted COVID-19. These were legitimate reasons to delay swearing in the jury.

On November 4, 2020, the government fulfilled its STA obligation by timely commencing Keith's trial proceedings. We now hold that the trial extended until November 23, when the first jury was excused. So those 19 days are excludable time. With that, we turn to the district court's third, fourth, and fifth continuances to see whether that time should count toward the 71-day mark or whether it was properly excluded for STA purposes.[7]

---

[7] The government also argues for *two* STA clocks. By its reckoning, one clock governed the interval from Keith's arraignment on December 19, 2018, to the first jury selection beginning on November 4, 2020, and the other clock restarted with no time elapsed once the court excused the first jury on November 23, 2020. This "two-clock" theory relies on § 3161(e), a provision that restarts the 70-day clock "following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial."

We reject the two-clock theory. Subsection (e)'s language "order . . . for a new trial" means an order granting a defendant's Rule 33 motion for a new trial after a guilty verdict. *See* Fed. R. Crim. P. 33; *see also United States v. Pitner*,

(continued)

18

### 3.    Ends-of-Justice Continuances

To recap, with *Loughrin* and *Nevarez* gnawing Keith's possible unexcludable time before and after his motion to dismiss, Keith can attack only the third period of delay (85 days), the fourth period (50 days), and a small part of the fifth period (9 days). We now turn to analyze whether the district court complied with the STA in its ends-of-justice continuance orders.

We begin with the third continuance. Ahead of an August 11, 2020 trial date, the government moved to continue the trial because of COVID-19's effect on trial preparations and the need for extra time for plea negotiations. The court made an ends-of-justice finding and reset trial for November 3, 2020. Keith argues that the court's findings were insufficient because the court didn't explain why a three-month continuance was necessary and didn't justify a need for plea-negotiation time.

To weigh the ends of justice against the public's and defendant's best interests in a speedy trial, courts consider four nonexclusive factors:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

---

307 F.3d 1178, 1182 n.3 (9th Cir. 2002) (interpreting this language to mean "the granting of a motion for new trial or its equivalent, *which would upset a verdict of conviction* and occasion a new trial" (emphasis added)). We have never applied § 3161(e) to situations like Keith's, where a jury was selected, not sworn, and later excused. After excusing a jury in an ordinary (non-COVID-19) prosecution, the parties would begin a second jury selection expeditiously, not after waiting ten weeks. We won't give the government a windfall by restarting the 70-day clock under § 3161(e) when the court never declared a mistrial.

19

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

§ 3161(h)(7)(B)(i)–(iv). Courts need not address factors that don't apply.

*United States v. Watson*, 766 F.3d 1219, 1229 (10th Cir. 2014) (quoting *United States v. Occhipinti*, 998 F.2d 791, 798 (10th Cir. 1993)).[8] But "the record must clearly establish the district court considered the proper factors at the time such a continuance was granted." *United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998) (citations omitted). Improper factors to consider include "general congestion of the court's calendar," "lack of diligent preparation," and "failure to obtain available [government] witnesses." § 3161(h)(7)(C).

---

[8] Keith omits the third factor, which applies to situations in which the indictment is delayed. This didn't happen here, so we agree that this factor is not in play. *See Watson*, 766 F.3d at 1229 (quoting *Occhipinti*, 998 F.2d at 798).

20

We see no abuse of discretion here. The district court's order stated that it "considered the factors" in § 3161(h)(7)(B) and that the ends of justice outweighed the best interest of the public and the defendant in a speedy trial. The court supported its ends-of-justice findings by identifying "the current state of the COVID-19 pandemic in Oklahoma" (citing W.D. Okla. General Orders 20-13 & 20-18), the "unique challenges" related to the need for "safety protocols," the parties' "trial preparation," defense counsels' "ability to meet with their respective clients," and the COVID-19-related difficulties in calling witnesses (especially, as the court noted, witnesses from Texas, where COVID-19 was more widespread). It twice incorporated more specific facts from the motion to continue. And so incorporated, the government's motion detailed the various District general orders and COVID-19 case counts, the extensive evidence and many witnesses, the difficulties in meeting with those witnesses, the near-impossibility of social distancing in the courtroom with three defendants and their attorneys, and the risk that COVID-19 would thwart the ability to select a representative cross-section of the public to serve on the jury.

Keith doesn't challenge any of these facts as clearly erroneous. He objects only that the court didn't explain why it continued the trial for three months instead of one or two. But Keith doesn't support his argument with precedent or language from the STA. The district court evidently hoped that the "current state of the COVID-19 pandemic in Oklahoma" and the other logistical challenges would improve by November. Given that the government would have

21

tried the case in November but for one infected juror, this prediction had merit. And the court's COVID-19 approach aligned with those of districts across the country. *See, e.g.*, *United States v. Olsen*, 21 F.4th 1036, 1049 (9th Cir.) (per curiam) (remanding case for district court to enter new ends-of-justice finding), *cert. denied*, 142 S. Ct. 2716 (2022); *United States v. Leveke*, 38 F.4th 662, 670 (8th Cir.) (no abuse of discretion for COVID-19 ends-of-justice findings), *cert. denied*, 143 S. Ct. 386 (2022); *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021) (same), *cert. denied*, 142 S. Ct. 1187 (2022). The district court acted within its discretion by excluding these 85 days from the STA clock, so none of this time counts toward the 70-day limit.

*    *    *

Even if Keith convinced us that the district court's fourth and fifth continuances (respectively spanning 50 and 9 days) were unexcludable time under the STA, those two periods would add up to only 59 days, not 71. So we need go no further and thus do not discuss the propriety of the fourth and fifth continuances. Because more than 70 unexcludable days had not elapsed between Keith's arraignment and his motion to dismiss, he cannot show an STA violation.

Our holding doesn't diminish that an ends-of-justice continuance still should be "a rarely used tool for those cases demanding more flexible treatment." *Toombs*, 574 F.3d at 1269 (quoting *Doran*, 882 F.2d at 1515). We simply agree that "surely a [once-in-a-century] global pandemic . . . falls

22

within such unique circumstances." *Olsen*, 21 F.4th at 1047. We affirm on statutory speedy-trial grounds.

### B.     Sixth Amendment

Keith also argues that the district court's ends-of-justice continuances violated his constitutional speedy-trial right.

The Sixth Amendment guarantees the "right to a speedy and public trial" for all criminal defendants. U.S. Const. amend. VI. We assess constitutional speedy-trial claims by balancing the four *Barker* factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Medina*, 918 F.3d 774, 780 (10th Cir. 2019) (discussing *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972)). No single factor controls our analysis. *See id.* (quoting *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010)). We discuss each factor in turn.

*Length of delay.* To trigger a *Barker* analysis, there must be "'presumptively prejudicial' delay," meaning delay approaching a year. *Id.* (citations omitted). The government concedes that the 29-month delay in bringing Keith to trial is presumptively prejudicial.[9] We find that this first factor favors Keith.

---

[9] Though Keith initially tallies a 35-month delay from indictment to sentencing, the Supreme Court has held that the Sixth Amendment's speedy-trial guarantee no longer applies "once a defendant has been found guilty at trial." *Betterman v. Montana*, 578 U.S. 437, 439 (2016). After the government cited *Betterman* in its brief, Keith conceded that the delay was only 29 months.

***Reason for delay.*** This second factor is "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). We must evaluate the government's reasons "for not bringing the defendant to trial in a timely fashion." *Margheim*, 770 F.3d at 1326. In evaluating the government's reasons, we weigh different justifications differently. *Barker*, 407 U.S. at 531. For example, intentional government tactics to delay the trial weigh heavily against the government; "neutral" reasons (such as "overcrowded courts") weigh against the government but less so; and "valid" reasons (such as a "missing witness") justify the delay. *Id.* But a defendant's actions that delay his own trial weigh heavily against him. *Margheim*, 770 F.3d at 1326 (quoting *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010)).

In its order denying Keith's motion to dismiss, the district court identified two reasons for the delay: "the massive amount of discovery in this complex case and the COVID-19 pandemic." It placed the "pandemic-driven reasons" in the "valid" category and found that this factor did not support Keith. On appeal, Keith blames all the delay—owing to the case's complexity, codefendants obtaining new counsel, COVID-19, and the first jury's being dismissed—on the government.

The first delay, spanning 418 days, came from the district court's scheduling order and designation that the case was complex. Delays owing to the nature of large, multidefendant conspiracies with vast discovery are justifiable. *Margheim*, 770 F.3d at 1327. This reason slightly favors the

24

government. The second delay, spanning 182 days, occurred because two codefendants needed more time for their newly appointed counsel to review discovery and prepare for trial. This, too, is a valid reason (prompted by codefendants) that does not support Keith's constitutional claim. *See id.* As the government points out, Keith bears some responsibility for the third delay, which spanned 85 days. Recognizing the logistical difficulties in trying all four remaining defendants together because of COVID-19, the government offered to try Keith separately in August 2020. But Keith rejected this offer, prompting the government to move to continue the trial to November. Keith's rejection of an earlier trial date weighs heavily against him. *See id.* at 1326 (quoting *Larson*, 627 F.3d at 1208).

The third delay also resulted from COVID-19-related challenges. So too did the fourth and fifth delays, comprising 50 and 119 days. These delays cannot fairly be attributed to the government or to Keith. To our knowledge, no circuit has yet published an opinion classifying COVID-19 delays under the second *Barker* factor.[10] We choose to treat COVID-19 as a truly neutral justification—not favoring either side. The extenuating circumstances brought about by the pandemic prevented the government from trying Keith in a speedy fashion.

---

[10] In an unpublished memorandum disposition, the Ninth Circuit classified COVID-19 delays as "valid" under *Barker*. *United States v. Marquez*, No. 21-30134, 2022 WL 16849065, at *1 (9th Cir. Nov. 10, 2022).

We conclude that the second factor slightly favors the government.

***Keith's assertions of his right.*** For this factor, we assess "whether the defendant 'actively' asserted his right, which requires more than merely 'moving to dismiss after the delay has already occurred.'" *United States v. Koerber*, 10 F.4th 1083, 1110 (10th Cir. 2021) (quoting *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006)), *cert. denied*, 143 S. Ct. 326 (2022). At bottom, we must measure "whether the defendant's behavior during the course of litigation evinces a desire to go to trial." *Id.* (quoting *Batie*, 433 F.3d at 1291). We can evaluate Keith's behavior by "'weigh[ing] the frequency and force of [his] objections' to the delay." *Margheim*, 770 F.3d at 1328 (second alteration in original) (citations omitted). We have called this factor the "most important" one, *Batie*, 433 F.3d at 1291, entitled to "strong evidentiary weight," *Toombs*, 574 F.3d at 1274 (quoting *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994)).

The district court found that Keith raised his speedy-trial right only once: in the motion to dismiss, which wasn't enough under the third factor. Keith claims that his objection to excusing the jury and his motion to dismiss count as "repeatedly" asserting his speedy-trial right.

We agree with the district court's characterization. Keith's "behavior during the course of litigation" did not show that he wanted a speedy trial. *Koerber*, 10 F.4th at 1110 (quoting *Batie*, 433 F.3d at 1291). Keith did not object to the district court's first scheduling order, allowing it to go into effect.

26

He agreed to the continuance that his codefendants sought in January 2020. And after rejecting the government's offer to be tried separately in August 2020, he didn't object to the government's requested continuance. The first time Keith objected to a continuance was when the government moved to excuse the first jury, but he didn't explain why he was objecting. Only after the district court sua sponte continued the trial from January to May 2021 did Keith move to dismiss on speedy-trial grounds. He never invoked his speedy-trial right before moving to dismiss in January 2021.

Moving to dismiss alone doesn't count as "actively" asserting one's speedy-trial right. *See Koerber*, 10 F.4th at 1110 (citations omitted). And Keith's one-sentence objection to excusing the jury in November 2020 was hardly forceful. Even charitably interpreting this unsupported objection as being for speedy-trial reasons, Keith still waited 700 days to raise his speedy-trial right. Keith's single objection to excusing the jury is best characterized as "[in]frequent" and "[un]forceful." *Id.* (quoting *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975)). Because the third factor may indeed be the "most important" one, *Batie*, 433 F.3d at 1291, it weighs heavily against Keith.

***Prejudice.*** Finally, "[w]e assess prejudice in light of the particular evils the speedy trial right is intended to avert: pretrial incarceration; anxiety and concern of the accused; and the possibility that the defense will be impaired." *Koerber*, 10 F.4th at 1110 (alteration in original) (quoting *Batie*, 433 F.3d at 1292). Showing prejudice is the defendant's burden. *Medina*,

27

918 F.3d at 781 (quoting *Seltzer*, 595 F.3d at 1179). We can presume prejudice when there has been "extreme" delay, meaning a six-year-or-greater delay. *Id.* (citations omitted). Ordinarily, however, a defendant must offer specific evidence of how the delay prejudiced him; failure to do so will "eviscerate" his claim. *Margheim*, 770 F.3d at 1329 (citations omitted).

Keith's asserted prejudice comes from "oppressive pretrial incarceration and the resulting anxiety"—after all, he had completed his state sentence in January 2020. Though he mentions that a witness died during the delay, Keith disclaims the witness's death as another ground for prejudice because "the record does not include any specific allegations concerning this witness and what they would have testified to."

Though "prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim," *Margheim*, 770 F.3d at 1330 (quoting *Seltzer*, 595 F.3d at 1180), Keith's arguments about "oppressive pretrial incarceration" and "anxiety" fail because they are too general. He doesn't "show some special harm suffered which distinguishes his case." *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015) (quoting *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012)). In *Margheim*, for example, the defendant supported his pretrial-incarceration-as-prejudice claim with specific facts: He was on "lockdown" for 18 hours a day and started taking anxiety and depression medications. 770 F.3d at 1329. By contrast, Keith offers no specifics. True, Keith finished serving his

28

state sentence while the federal charges were pending. But Keith's harm from being in pretrial detention for 484 days is the same as the harm suffered by "any other arrestee awaiting trial." *United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir. 2018) (quoting *Dirden*, 38 F.3d at 1138). Keith hasn't shown prejudice.

Because Keith cannot point to any prejudice stemming from the delays in his case, the fourth factor weighs against him.

\*       \*       \*

The first factor favors Keith. The second factor slightly favors the government. The third factor strongly favors the government. And the fourth factor also favors the government. On balance, Keith has failed to show that the delays violated the Constitution. This case isn't the "unusual" one where "the Speedy Trial Act has been satisfied" yet the Sixth Amendment was violated. *Koerber*, 10 F.4th at 1109 (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 464 (10th Cir. 2006)).

We affirm on constitutional speedy-trial grounds.

## II.    Multiple-Conspiracies Instruction

Keith contends that the district court should have given a Tenth Circuit Pattern Jury Instruction about multiple conspiracies. At trial, he attempted to disassociate himself from the wide conspiracy charged in the indictment and instead place himself in a separate, smaller conspiracy. A multiple-conspiracies instruction tells the jury that it must find that the defendant belonged to the

conspiracy charged in the indictment; proof that the defendant participated in some other conspiracy isn't enough to convict.

We won't reverse a district court's failure to give a multiple-conspiracies jury instruction if the given instructions impart that "the government had the burden of proving beyond a reasonable doubt the [single] conspiracy as alleged, and that the evidence should be considered separately as to each individual defendant." *United States v. Cushing*, 10 F.4th 1055, 1073 (10th Cir. 2021) (alteration in original) (quoting *United States v. Evans*, 970 F.2d 663, 675 (10th Cir. 1992)), *cert. denied*, 142 S. Ct. 813 (2022). Keith recognizes that *Evans* forecloses his argument about the multiple-conspiracies instruction and raises it only for preservation. In doing so, Keith admits that the other instructions meet *Evans*'s two-part test. We agree and affirm under *Evans*.

## CONCLUSION

For the foregoing reasons, we affirm.