**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 20, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER KENNETH FLYNN,

    Defendant - Appellant.

No. 22-4124
(D.C. No. 2:16-CR-00056-RJS-JCB-5)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Defendant Christopher Flynn was convicted by a jury of conspiracy to distribute methamphetamine and heroin, as well as two firearms offenses. Mr. Flynn now appeals his convictions, arguing that the district court violated his rights under the Speedy Trial Act and the Sixth Amendment by failing to conduct his trial in a timely fashion, and that the evidence presented at trial was insufficient to support one

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of his firearms convictions.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject Mr. Flynn's arguments and affirm his convictions.

I

In 2015, Hiram Gamaliel Perez-Tapia and Elizabeth Martinez began trafficking methamphetamine, cocaine, and heroin in Salt Lake City, Utah.  As part of their operation, Mr. Perez-Tapia and Ms. Martinez obtained drugs from sources in Arizona and sold those drugs to other dealers, including Mr. Flynn, as well as to street-level users.  Because Mr. Perez-Tapia is blind, Ms. Martinez significantly assisted him in the operation, including driving him around, handling drugs and money, and maintaining logs of incoming and outgoing drug supplies and proceeds.

Mr. Perez-Tapia and Ms. Martinez initially sold methamphetamine to Mr. Flynn, including amounts up to three pounds per day.  As the relationship continued, Mr. Perez-Tapia and Ms. Martinez also sold heroin and cocaine to Mr. Flynn and they began "front[ing]" the drugs to Mr. Flynn and allowing him to pay down his debt over time.  R. vol. IV at 320.  Mr. Perez-Tapia, who was a gun enthusiast, also allowed Mr. Flynn to pay his debt with firearms.  During the period they worked together, Mr. Flynn provided Mr. Perez-Tapia with between sixteen and twenty firearms.

In late 2015, Ms. Martinez had a change of heart.  Unbeknownst to Mr. Perez-Tapia, she approached law enforcement officials and provided them with information about the organization's suppliers, dealers, and customers.  The list of identified dealers included Mr. Flynn.  Based on the information provided by Ms. Martinez,

2

federal agents obtained and executed a search warrant at Mr. Perez-Tapia's house while he was in Arizona. During the course of the search, they seized several firearms Mr. Perez-Tapia had received from Mr. Flynn as payment for drugs.

Federal agents also obtained a wiretap for Mr. Flynn's phone and began intercepting his communications with others in the organization, including Mr. Perez-Tapia. When Mr. Perez-Tapia returned home and discovered his guns were missing, he assumed he had been robbed and reached out to Mr. Flynn to bring him some "toys," i.e., guns, so they could teach the robbers a "lesson." *Id.* at 921–22. Mr. Flynn arranged to deliver firearms to Mr. Perez-Tapia in a hotel parking lot in downtown Salt Lake City.

Federal agents observed Mr. Flynn deliver multiple firearms to Mr. Perez-Tapia's car, then stopped the car as it left the hotel, arrested Mr. Perez-Tapia and his driver, and seized the firearms. The agents arrested Mr. Flynn a few weeks later.

## II

In February 2016, Mr. Flynn was charged by complaint with conspiracy to distribute methamphetamine. A federal grand jury subsequently indicted Mr. Flynn, Mr. Perez-Tapia, and four coconspirators on multiple drug and firearms charges. Mr. Flynn was charged with conspiracy to distribute methamphetamine, heroin, and cocaine, all in violation of 21 U.S.C. § 846, as well as two firearms charges: possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

3

The district court initially set a trial for all defendants in April 2016. In March 2016, however, Mr. Flynn replaced his attorney and his new counsel moved for a continuance. The district court granted that motion and reset the trial for June 2016. Mr. Flynn's codefendants then moved for and were granted a continuance of the trial until early 2017. Prior to trial, Mr. Flynn and his codefendants moved to determine the admissibility of coconspirator statements at trial. That resulted in the district court vacating the early 2017 trial date. After the district court resolved the defendants' motion, it reset the trial for July 2017.

In February 2017, Mr. Flynn replaced his second attorney. At a final pretrial conference in June 2017, Mr. Flynn's third attorney moved to continue the trial so he could have time to adequately prepare. The district court granted the motion and vacated the July 2017 trial date. In the meantime, all of Mr. Flynn's codefendants pleaded guilty.

Between July 2017 and early 2020, Mr. Flynn changed counsel approximately four additional times and, for that reason and others, the trial was continued. In late February 2020, the grand jury returned a second superseding indictment that removed the conspiracy to distribute cocaine charge and made other minor changes to the remaining charges against Mr. Flynn.

A scheduled March 2020 trial date was vacated due to the Covid-19 pandemic and rescheduled for June 2020. In May 2020, Mr. Flynn replaced his counsel yet again. The district court subsequently continued the trial. In the fall of 2020,

Mr. Flynn's counsel filed additional suppression and discovery motions, as well as a motion for continuance.

Due to discovery issues and pandemic-related concerns, the trial date was continued several more times. In October 2021, Ms. Martinez died. In November 2021, Mr. Flynn's counsel moved for a continuance of the scheduled February 2022 trial date. The district court denied the motion for continuance.

In early 2022, Mr. Flynn's relationship with his attorney deteriorated and he requested permission to proceed pro se. The magistrate judge held a *Faretta*[1] hearing, at which Mr. Flynn alleged that his seven prior attorneys had all "sabotage[d]" his case. R. vol. VI at 325. Mr. Flynn asked the court to continue the scheduled trial date to give him time to adequately prepare to represent himself. The magistrate judge granted Mr. Flynn's request to represent himself, but noted that the decision whether to continue the trial would be left to the district court.

The district court subsequently vacated the February 2022 trial date and granted the government's motion to continue the trial to July 2022 due to pandemic-related concerns and Mr. Flynn's need for additional time to prepare for trial. Mr. Flynn then filed two motions to dismiss, one of which argued that the "first indictment" against him remained "pending" and violated the Speedy Trial Act. The district court denied both motions. R. vol. II at 580.

---

[1] *Faretta v. California*, 422 U.S. 806, 835–36 (1975) (holding that a defendant has the right to represent himself, which he may exercise by voluntarily and intelligently waiving his right to counsel).

The case proceeded to trial in July 2022.  At the conclusion of the evidence, the jury found Mr. Flynn guilty on all counts.  The district court subsequently sentenced Mr. Flynn to a term of imprisonment of 236 months, to be followed by a five-year term of supervised release.

### III

Mr. Flynn raises three issues on appeal.  In his first and second issues, he argues the district court violated his rights under the Speedy Trial Act (STA) and the Sixth Amendment by allowing him to "languish[] in pretrial incarceration for 2,363 days before his trial."  Aplt. Br. at 12.  He asserts the proper remedy for these alleged violations is dismissal of the charges against him.  In his third issue, Mr. Flynn challenges the sufficiency of the evidence supporting his § 924(c) conviction.  For the reasons that follow, we reject all of Mr. Flynn's arguments.

### A

The STA requires "a criminal trial [to] commence within 70 days from the indictment's filing or the defendant's initial appearance in court, whichever date occurs later."  *United States v. Ray*, 899 F.3d 852, 861 (10th Cir. 2018) (citing 18 U.S.C. § 3161(c)(1)).  To preserve a claim under the STA, a defendant must "move for dismissal prior to trial or entry of a plea of guilty or nolo contendere." 18 U.S.C. § 3162(a)(2).  Importantly, "a defendant's pretrial motion to dismiss under the STA must include the specific STA objection that he or she raises on appeal; otherwise that objection is waived."  *Ray*, 899 F.3d at 861; *see United States v. Loughrin*, 710 F.3d 1111, 1121 (10th Cir. 2013) (interpreting § 3162(a)(2) "to mean

that we may not conduct any review of [STA] arguments unraised below, not even for plain error").

In March 2022, Mr. Flynn filed a pro se motion to dismiss the second superseding indictment. In that motion, Mr. Flynn argued that the district court "ha[d] not dismissed" the "first indictment" and that, as a result, "the charges" in that indictment "[we]re still pending."[2] R. vol. II at 580. He in turn argued that the district court's "failure to dismiss the first indictment of the charges against [him] violate[d] the time limits under 18 USC [§] 3161." *Id.* Mr. Flynn also separately argued that the district court violated the STA by (a) granting an ends-of-justice continuance of the trial from March 31, 2020, to June 2, 2020, and (b) continuing the trial from February 1, 2022, to July 26, 2022, due to Covid-related concerns.

In this appeal, however, Mr. Flynn makes an entirely different set of arguments. Specifically, he focuses on ten "contested periods of time" that he "asserts should be counted toward his speedy trial clock." Aplt. Br. at 15. These include: (1) February 11 to March 21, 2016; (2) March 24 to April 8, 2016; (3) April 27 to May 1, 2017; (4) July 31 to August 25, 2017; (5) January 11 to June 6, 2019 (but excluding March 14 to 20, 2019); (6) September 16 to September 30, 2019; (7) December 3 to December 5, 2019; (8) December 6 to December 19, 2019; (9) June 2 to June 17, 2020; and (10) August 26 to September 1, 2020.

---

[2] It is unclear whether Mr. Flynn was referring to the original indictment or the first superseding indictment.

Because Mr. Flynn did not raise any of these arguments in his pretrial motion to dismiss, they are now waived for purposes of appeal. *Ray*, 899 F.3d at 861.

B

Mr. Flynn also invokes the Sixth Amendment, which guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI. Before we may address this claim, however, we must determine whether Mr. Flynn timely raised the claim in the district court.

Federal Rule of Criminal Procedure 12(b)(3)(A)(iii) requires "a violation of the constitutional right to a speedy trial" to "be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(iii). Rule 12(c)(3) in turn addresses the consequences of not making a timely motion under Rule 12(b)(3): "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

As noted, Mr. Flynn filed a pro se pretrial motion to dismiss the second superseding indictment arguing, in relevant part, that the district court violated his rights under the STA by continuing the trial from February 1, 2022, to July 26, 2022. As part of that argument, Mr. Flynn asserted: "The defendant's speed[y] trial was violated of 18 USC [§] 3161[(h)](7)(c), and his *constitutional right* was violated and suffered an unfair and bias decision with [sic] was prejudice [sic] to the defendant and the case against the defendant dismissed." R. vol. II at 581 (emphasis added).

8

Mr. Flynn concedes he never cited the Sixth Amendment, but argues that his reference to "constitutional right" should be liberally construed as asserting a Sixth Amendment violation. Aplt. Reply Br. at 7.

Two facts undercut Mr. Flynn's argument. First, in the preceding page of his motion to dismiss, Mr. Flynn argued that the district court, by allegedly failing to dismiss the "first indictment," had violated his "fifth amendment" right to be "indicted by a grand jury," his right to "due process," and his right to "the effective assistance of counsel." R. vol. II at 580. In light of those arguments, it is not clear that Mr. Flynn's generic reference to "constitutional right" on the following page was intended to invoke his Sixth Amendment right to a speedy trial. Second, neither the government nor the district court construed Mr. Flynn's pro se pretrial motion to dismiss in the manner that Mr. Flynn now suggests, i.e., as asserting a violation of his Sixth Amendment right to a speedy trial. Instead, the district court construed Mr. Flynn's motion as raising only a speedy trial challenge under the STA. And, after the district court denied Mr. Flynn's motion, he remained silent and did not seek reconsideration of the district court's decision.

For these reasons, we conclude Mr. Flynn failed to present his Sixth Amendment argument to the district court in a timely fashion as required by Rule 12(b)(3)(A)(iii). And, because Mr. Flynn makes no attempt in his appeal to show good cause for his failure to do so, his Sixth Amendment claim is waived for purposes of appeal pursuant to Rule 12(c)(3). *See United States v. Bowline*, 917 F.3d 1227, 1230, 1237 (10th Cir. 2019) (construing Rule 12(c)(3) as allowing an untimely

Rule 12 motion to be considered only when the movant shows good cause); *United States v. Vance*, 893 F.3d 763, 769 (10th Cir. 2018) ("Failure to comply with the timeliness requirement set out in Rule 12 constitutes a waiver.").

Finally, even assuming that Mr. Flynn presented his Sixth Amendment argument to the district court in a timely fashion and thus satisfied Rule 12(b)(3), we are not persuaded his Sixth Amendment right to a speedy trial was violated. *See generally Barker v. Wingo*, 407 U.S. 514, 530 (1972) (outlining four factors that must be balanced in assessing an alleged violation of the Sixth Amendment right to a speedy trial); *United States v. Medina*, 918 F.3d 774, 788 (10th Cir. 2019) ("We review a defendant's claim under the Sixth Amendment's Speedy Trial Clause de novo," including the assessment of the *Barker* factors). To be sure, the delay of more than six years between Mr. Flynn's original indictment and his trial is presumptively prejudicial. *See Barker*, 407 U.S. at 530. But that presumption is overcome when we examine the reasons for the delay, whether Mr. Flynn asserted his right to a speedy trial, and whether the delay prejudiced him. *See id.* The record in this case makes quite plain that the bulk of the delay was attributable to two reasons: (1) the Covid-19 pandemic; and, more significantly, (2) Mr. Flynn's own litigation conduct, which included changing attorneys seven times before deciding to represent himself, moving to suppress evidence nearly a dozen times, moving to dismiss the charges against him at least five times, and requesting nearly twenty trial continuances. *See United States v. Keith*, 61 F.4th 839, 852 (10th Cir. 2023) (noting "a defendant's actions that delay his own trial weigh heavily against him for purposes of the second

10

*Barker* factor, i.e., the reason for the delay); *id.* at 853 ("choos[ing] to treat COVID-19 as a truly neutral justification" for purposes of the Sixth Amendment right to a speedy trial).  Further, Mr. Flynn made no serious attempt, until he filed his pro se motion to dismiss nearly five years into the litigation, to raise any concerns about his speedy trial rights.  *See id.* at 853 (noting "we assess whether the defendant actively asserted his right, which requires more than merely moving to dismiss after the delay has already occurred") (internal quotation marks omitted).  Lastly, we conclude, given the overwhelming evidence against him, that Mr. Flynn was not prejudiced by the delay.  Although he asserts he was prejudiced by the absence of Ms. Martinez as a witness, he fails to convincingly explain how Ms. Martinez's testimony could have benefitted him.  At the same time, he all but ignores the fact that the head of the drug conspiracy, Mr. Perez-Tapia testified at trial and directly implicated him as a coconspirator.

C

Mr. Flynn also argues that the evidence presented at trial was insufficient to support his conviction for possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Because Mr. Flynn did not raise this argument in the district court, we review it only for plain error.  *See United States v. Williams*, 934 F.3d 1122, 1127 (10th Cir. 2019).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted).  "But as a practical matter," plain error review in

11

this context is similar to de novo review "because insufficiency of the evidence generally meets the plain error test." *Id.* Accordingly, we "view[] the evidence in the light most favorable to the Government" and determine whether "any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Dermen*, 143 F.4th 1148, 1215 (10th Cir. 2025) (internal quotation marks and brackets omitted).

To convict Mr. Flynn under § 924(c)(1)(A), the government was required to prove beyond a reasonable doubt that Mr. Flynn: (1) committed a drug trafficking crime; (2) possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime. *See United States v. Lowe*, 117 F.4th 1253, 1267 (10th Cir. 2024).

Mr. Flynn does not dispute the first two of these elements, i.e., that he committed the offense of conspiracy to distribute methamphetamine and that he possessed a Cobra Enterprise .380 firearm. Instead, he argues that "the government failed to meet its burden of proof to show [he] possessed a Cobra Enterprise .380 in furtherance of a conspiracy to distribute methamphetamine." Aplt. Br. at 40.

"To meet the 'in furtherance element,' the government needed to prove beyond a reasonable doubt that the weapon furthered, promoted or advanced" the conspiracy offense. *Lowe*, 117 F.4th at 1267–68. "This require[d] that the government establish some nexus between the firearm[] and the underlying drug trafficking crime." *Id.* at 1268 (internal quotation marks omitted).

12

After examining the record on appeal, we conclude the government's evidence at trial satisfied this standard. To begin with, the government's evidence indicated that when Mr. Perez-Tapia and Mr. Flynn began working together, Mr. Flynn was exclusively purchasing and distributing methamphetamine he received from Mr. Perez-Tapia. The government's evidence further indicated that Mr. Flynn continued to distribute predominantly methamphetamine during the entire time he worked with Mr. Perez-Tapia. In addition, the evidence indicated that after Mr. Perez-Tapia became familiar with Mr. Flynn, he began "front[ing]" drugs to him, meaning that Mr. Flynn would "borrow the drugs," incur a debt to Mr. Perez-Tapia, and then repay him later for that debt. R. vol. IV at 320. During his testimony, Mr. Perez-Tapia acknowledged "there were times when [Mr.] Flynn could not pay his debt for the narcotics purchases so he began offering items such as . . . firearms." *Id.* at 403. Mr. Perez-Tapia in turn acknowledged that "all the firearm prices were credited against the debt that [Mr.] Flynn had acquired from purchasing the methamphetamine[] and heroin." *Id.* at 404. Mr. Flynn testified that one of the firearms he received from Mr. Flynn under this arrangement was the Cobra Enterprise .380 firearm. That firearm was ultimately seized from Mr. Perez-Tapia's apartment as part of the search that occurred while he was in Arizona. We conclude this evidence, taken together, would have allowed the jury to reasonably infer that Mr. Flynn's possession and delivery of the Cobra firearm to Mr. Perez-Tapia was intended to further, promote, or advance the conspiracy to distribute methamphetamine. More specifically, by using the Cobra firearm to pay off part of

13

his drug debt to Mr. Perez-Tapia, Mr. Flynn ensured that the arrangement would continue and that he could continue to purchase and distribute methamphetamine from Mr. Perez-Tapia.

For these reasons, we reject Mr. Flynn's challenge to the sufficiency of the evidence supporting his § 924(c)(1)(A) conviction.

## IV

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge